Electronically Filed
2/17/2017 3:45:01 PM
Hidalgo County District Clerks
Reviewed By: Alexis Bonilla

CAUSE NO. ___C-0772-17-E___

| | | |
|---|---|---|
| NIDIA REYNA | § | IN THE DISTRICT COURT |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | ____JUDICIAL DISTRICT |
| | § | |
| PALOMAR SPECIALTY INSURANCE | § | |
| COMPANY AND | § | |
| JOHN CZUHAJEWSKI | § | |
| | § | |
| *Defendants.* | § | HIDALGO COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION AND REQUESTS FOR DISCLOSURE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Nidia Reyna hereinafter referred to as "Plaintiff," complaining Palomar Specialty Insurance Company and John Czuhajewski hereinafter collectively referred to as "Defendants," and hereby respectfully shows unto the Court and Jury as follows:

### I. DISCOVERY CONTROL PLAN

Plaintiff intends for discovery to be conducted under Level III of Rule 190 of the Texas Rules of Civil Procedure. This case involves complex issues and will require extensive discovery. Therefore, Plaintiff asks the Court to order that discovery be conducted in accordance with a discovery control plan tailored to the particular circumstances of this suit.

### II. RULE 47 STATEMENT

Plaintiff seek monetary relief over $100,000.00 but not more than $200,000.00, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney's fees.

### III. PARTIES

Plaintiff is an individual and resident of Hidalgo County, Texas

Date_____

A true copy I certify
LAURA HINOJOSA
District Clerk, Hidalgo County, Texas
By_____Deputy#3

EXHIBIT
B

Electronically Filed
2/17/2017 3:45:01 PM
Hidalgo County District Clerks
Reviewed By: Alexis Bonilla

**C-0772-17-E**

Defendant Palomar Specialty Insurance Company (hereinafter individually referred to as "Palomar") is an insurance company, which on information and belief, is eligible to conduct the business of insurance in Texas.  It can be served with citation by serving CT Corporation System by certified mail, return receipt requested, at: 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3140 **Service of process is requested by private process as authorized by this Court.**

Defendant John Czuhajewski (hereinafter individually referred to as "Czuhajewski") is an insurance adjuster licensed in the State of Texas, which on information and belief, is eligible to conduct the business of insurance in Texas. Defendant Czuhajewski can be served with citation by personal service at: 705 Allen Street, Copperas Cove, Texas 76522-3151. **Service of process is requested by private process as authorized by this Court.**

### IV. JURISDICTION AND VENUE

This Court has Jurisdiction over this case in that the amount in controversy exceeds the minimum jurisdictional limits of this Court.

Venue is mandatory and proper in Hidalgo County, Texas, because all or a substantial part of the events giving rise to the lawsuit occurred in this Hidalgo County (*see* Tex. Civ. Prac. & Rem. Code §15.002) and the insured property that is the basis of this lawsuit is located in Hidalgo County, Texas. *See* Tex. Ins. Code §2210.552 and Tex. Civ. Prac. & Rem. Code §15.032 (see below). Venue is proper and mandatory in Hidalgo County against all the Defendants in this case because venue is mandatory and/or proper against at least one Defendant and all claims or actions in this case arise out of the same transaction, occurrence, or series of transaction or occurrences. *See* Tex. Civ. Prac. & Rem. Code §15.005.

### V.  CONDITIONS PRECEDENT

All conditions precedent to recovery have been performed, waived, or have occurred.

Electronically Filed
2/17/2017 3:45:01 PM
Hidalgo County District Clerks
Reviewed By: Alexis Bonilla

**C-0772-17-E**

## VI. FACTS

A.     Plaintiff is the holder of Policy PIC-428 and maintained by Defendant Palomar.

B.     Plaintiff is owner of the property which is specifically located at: 2516 Gull Avenue, McAllen, Hidalgo County, Texas 78504-4325 (hereinafter referred to as the "Property").

C.     Defendant Palomar, or their agents/representatives, sold a policy to Plaintiff insuring the Property (hereinafter referred to as the "Policy"). Defendant Palomar represented to the Plaintiff that the Policy was sufficient to cover any possible damages to the Property and Plaintiff relied on those representations. Policy is attached and incorporated as "Exhibit A."

D.     Defendant Palomar represented that the Plaintiff had adequate personal property and dwelling coverage for the benefit of the Plaintiff's Property.

E.     On or about March 26, 2015, a wind and hailstorm caused significant damage to the exterior and also the interior of the Property as well of which Plaintiff reported a loss to Defendant Palomar.

F.     Plaintiff submitted a claim against the Policy for damage sustained to the Property as a result of the wind and hailstorm and Defendants assigned PSI-68475(hereinafter referred to as the "Claim"). Plaintiff requested that Defendant Palomar cover the cost of repairs to the Property, replace or repaired damaged covered personal property, and if warranted, allocated loss of use payment pursuant to the Policy and any other available coverage under the Policy.

G.     Prior to Plaintiff purchasing the Policy, the Defendant Palomar represented to Plaintiff that damages like what the Property sustained by the cause of damage would be covered by the Policy if such damage occurred. Defendant Palomar further represented that it was a quality insurance company, a reputable insurance company, with few complaints, and that Defendant Palomar would pay Plaintiff fairly for damage to the Property in the event of a claim, that Defendants collectively would treat Plaintiff fairly, and that Plaintiff's Policy provided coverage for the Property. Moreover, Defendants collectively represented that they would not

Electronically Filed
2/17/2017 3:45:01 PM
Hidalgo County District Clerks
Reviewed By: Alexis Bonilla

**C-0772-17-E**

conduct an outcome-oriented investigation of Plaintiff's claim, and that overall Plaintiff would be adequately and fairly compensated if Plaintiff's Property sustained damage from a wind and hailstorm, and Plaintiff made a claim under the Policy. These and other representations by Defendant Palomar were false and were either negligently made to Plaintiff, recklessly made without any knowledge of their truth or their falsity, or they were made knowingly and intentionally regarding their falsity. These misrepresentations were made to induce Plaintiff to purchase the Policy from Defendant Palomar, and Plaintiff did, in fact, rely on these misrepresentations in deciding to purchase the Policy from Defendant Palomar.

H.     Without limitation, Defendant Czuhajewski's narrow assessment negligently misrepresented the duty to properly evaluate all the damages that had occurred by simply ignoring the damage to the entire Property with an outcome oriented analysis of minimal areas of the dwelling damages alone. Defendant Czuhajewski failed to account for the cost of repair, replacement, and/or removal of the damaged Property as a result of the cause of damage to return the property to pre-loss condition. Defendants have also failed to account for the Plaintiff's out-of-pocket cost to mitigate the loss as well as the amount of insurance coverage for Plaintiff's claim/loss under Plaintiff's Policy.

I.     Defendants failed to properly adjust the claims and have denied at least a portion of the claims with an inadequate investigation by solely relying on Defendant Czuhajewski's narrowly tailored and grossly misrepresented inspection, even though the Policy provides coverage for losses such as those suffered by Plaintiff.

J.     Furthermore, these false representations made by Defendant Czuhajewski in his misrepresented damage assessment was intentionally incorporated by the Defendant Palomar to minimize payment on the claim, have and continue to allow Defendants to financially gain by wrongfully denying at least a portion of Plaintiff's Claim.

Electronically Filed
2/17/2017 3:45:01 PM
Hidalgo County District Clerks
Reviewed By: Alexis Bonilla

**C-0772-17-E**

K.  Plaintiff's Claim still remains unpaid and she still has not been able to properly repair the Property due to the outcome-oriented investigation, misrepresentations, and failures of Defendants to properly adjust the damage and promptly submit full payment per the Policy.

L.  Defendants have failed to perform its contractual duty to adequately compensate Plaintiff under the terms of the Policy. Specifically, Defendant Palomar failed and refused to pay on the Policy, although due demand was made for proceeds to be paid in an amount sufficient to cover the damaged Property due to the wind and hailstorm. All conditions precedent to recovery upon the Policy had been carried out and accomplished by Plaintiff. Defendant Palomar's conduct constitutes a breach of contract between the Defendant Palomar and Plaintiff.

M.  Defendant Czuhajewski's outcome-oriented investigation was a misrepresentation to Plaintiff by failing to account for the total damages inflicted upon Plaintiff's Property due to the cause of damage Defendant Palomar accepted the misrepresentations from Defendant Czuhajewski and incorporated them into the denial of at least a portion of Plaintiff's claim by indicating the loss was not covered. Defendants' conduct constitutes a violation of the Texas Insurance Code, Misrepresentation Regarding Policy or Insurer. TEX. INS. CODE Section 541.060 (a)(1).

N.  Defendant Palomar failed to make an attempt to settle Plaintiff's claim in a fair manner, even though they were aware of their liability to Plaintiff under the Policy. Defendant Palomar' conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE Section 541.060(a)(2)(A).

O.  Defendant Palomar failed to perform its contractual duty to adequately compensate Plaintiff under the terms of the Policy. Specifically, Defendant Palomar failed and refused to pay on the Policy, although due demand was made for proceeds to be paid in an amount sufficient to cover the damaged Property and all conditions precedent to recovery upon the Policy had been carried out and accomplished by Plaintiff. Defendant Palomar's conduct constitutes a breach of contract between the Defendants and Plaintiff.

Electronically Filed
2/17/2017 3:45:01 PM
Hidalgo County District Clerks
Reviewed By: Alexis Bonilla

**C-0772-17-E**

P.      Defendants and/or its representative, including Defendant Czuhajewski's misrepresentations to Plaintiff that they performed a thorough investigation; however, in reality Defendants refused to assess the total damages inflicted upon Plaintiff's Property due to the wind and hailstorm. Defendants' conduct constitutes a violation of the Texas Insurance Code, Misrepresentation Regarding Policy or Insurer. TEX. INS. CODE Section 541.060 (a)(1).

Q.      Defendants failed to make an attempt to settle Plaintiff's claim in a fair manner, even though Defendants were aware of their liability to Plaintiff under the Policy. Defendants' conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE Section 541.060(a)(2)(A).

R.      Defendant Palomar failed to explain to Plaintiff the reasons for their offer of an inadequate settlement. Specifically, Defendant Palomar failed to offer Plaintiff adequate compensation, without further investigating the damages cause to the dwelling and entire Property due to the wind and hailstorm. Furthermore, Defendant Palomar did not communicate that any possible future settlements or payments would be forthcoming to pay for the entire loss covered under the Policy, nor did they provide any explanation for the failure to adequately settle Plaintiff's Claim. Defendant Palomar's conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE Section 541.060 (a)(3).

S.      Defendant Palomar failed to affirm or deny coverage of Plaintiff's Claim within a reasonable time. Specifically, Plaintiff did not receive timely indication of acceptance or rejection, regarding the full and entire Claim, in writing from Defendant Palomar despite the evidence presented depicting the wind and hailstorm damage to the Property. Defendant Palomar's conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE Section 541.060(a)(4).

T.      Defendants refused to compensate Plaintiff, under the terms of the Policy, because Defendants failed to conduct a reasonable investigation of the wind and hailstorm damage to the Property.

Electronically Filed
2/17/2017 3:45:01 PM
Hidalgo County District Clerks
Reviewed By: Alexis Bonilla

**C-0772-17-E**

Specifically, Defendant Czuhajewski performed a substandard, outcome-oriented investigation of Plaintiff's damage by failing to fairly and adequately inspect the entire Property; Furthermore, Defendant Palomar accepted Defendant Czuhajewski's misrepresentations of the Property damage and incorporated them into the denial of at least a portion of Plaintiff's Claim. This negligently conducted inspection resulted in Defendant Palomar's biased, unfair, and inequitable evaluation of Plaintiff's loses to the Property as covered by the Policy. Defendants' conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE Section 541.060 (a)(7).

U.   Defendant Palomar failed to meet its obligations under the Texas Insurance Code regarding timely acknowledging Plaintiff's Claim, beginning an investigation of Plaintiff's Claim and requesting all information reasonably necessary to investigate Plaintiff's Claim within the statutorily mandated deadline. Defendant Palomar's conduct constitutes violation of the Texas Insurance Code, Prompt Payment of Claims, TEX. INS. CODE Section 542.055.

V.   Defendants failed to accept or deny Plaintiff's full and entire Claim within the statutory mandated deadline of receiving all necessary information. Defendant Palomar's conduct constitutes violation of the Texas Insurance Code, Prompt Payment of Claims. TEX. INS. CODE Section 542.056.

W.   Defendants Palomar failed to meet its obligations under the Texas Insurance Code regarding payment of Plaintiff's Claim without delay. Specifically, Defendants have delayed full payment of Plaintiff's Claim longer than allowed and, to date; Plaintiff has not yet received full payment for her claim. Defendant Palomar's conduct constitutes violation of the Texas Insurance Code, Prompt Payment of Claims, TEX. INS. CODE Section 542.058.

X.   From and after the time Plaintiff's Claim was presented to Defendants, the liability of Defendant Palomar to pay the full claim in accordance with the terms of the Policy was reasonably clear. However, Defendant Palomar has refused to pay Plaintiff in full, despite

Electronically Filed
2/17/2017 3:45:01 PM
Hidalgo County District Clerks
Reviewed By: Alexis Bonilla

C-0772-17-E

there being no basis whatsoever on which a reasonable insurance company would have relied to deny the full payment. Defendant Palomar's conduct constitutes a breach of the common law duty of good faith and fair dealing.

Y.   As a result of all of Defendants' wrongful acts, misrepresentations, and omissions as set forth herein, Plaintiff was forced to retain the professional services of the attorney and law firm who is representing Plaintiff with respect to these causes of action.

Z.   Plaintiff's experience is not an isolated case. The wrongful acts, misrepresentations, and omissions committed by Defendants in this case, or similar acts and omissions, occur with such frequency that they constitute a general business practice of Defendants with regard to handling these types of claims. Defendants' entire process is unfairly biased and designed to reach favorable outcomes for the company at the expense of the policyholder.

## VII. THEORIES OF LIABILITY

### A. Cause of Action for Breach of Contract

According to the Insurance Policy that Plaintiff purchased, Defendants have the duty to investigate and pay Plaintiff's policy benefits for claims made for covered damages, including additional benefits under the Policy, resulting from wind and hailstorm. As a result of the wind and hailstorm, which is a covered peril under the Policy, Plaintiff's Property has been damaged.

Defendants' failure and refusal, as described above, to pay the adequate compensation as it is obligated to do under the terms of the Policy in question, and under the laws of the State of Texas, constitutes a breach of Defendants' contract with Plaintiff. As a result of this breach of contract, Plaintiff has suffered the damages that are described in this petition.

### B. Cause of Action for Violation of Section 542

Plaintiff re-alleges and incorporates by reference all previous and subsequent paragraphs herein.

Electronically Filed
2/17/2017 3:45:01 PM
Hidalgo County District Clerks
Reviewed By: Alexis Bonilla

**C-0772-17-E**

Defendants' wrongful acts, omissions, failures and conduct that are described in this petition violate Section 542 of the Texas Insurance Code, including without limitation the misrepresentations made by any of the Defendants as set forth above which were made to and which did, in fact, induce Plaintiff into purchasing the Policy from Defendants.

Within the timeframe required after the receipt of either actual or written notice of Plaintiff's Claim, Defendants did not request from Plaintiff any items and forms that it reasonably believed at that time would be required for adequately processing Plaintiff's Claim. As a result, Defendants have violated Section 542 by failing to accept or reject Plaintiff's Claim in writing within the statutory timeframe. Defendants also violated Section 542 by failing to pay Plaintiff's Claim within the applicable statutory period. In addition, in the event it is determined Defendants owe Plaintiff any additional monies on Plaintiff's Claim, Defendants have automatically violated Section 542 in this case.

**C. DTPA Cause of Action**

Plaintiff re-alleges and incorporates by reference all previous and subsequent paragraphs herein.

Plaintiff incorporates all the allegations in this petition for this cause of action against Defendants under the provisions of the DTPA, including without limitation the misrepresentations made by the Defendants as set forth above which were made to and which did, in fact, induce Plaintiff into purchasing the Policy from Defendants. Plaintiff is a consumer or intended beneficiary of goods and services, provided by Defendants pursuant to the DTPA. Plaintiff has met all conditions precedent to bringing this cause of action against Defendants.

By its acts, omissions, failures, and conduct that are described in this petition, The Defendants have violated Sections 17.46 (b)(2), (5), (7), (9), (12), (20) and (24) of the DTPA. In this respect, Defendants' violations include, without limitation, (1) its unreasonable delays in the investigation, adjustment and resolution of Plaintiff's Claim, (2) its failure to give Plaintiff the

Electronically Filed
2/17/2017 3:45:01 PM
Hidalgo County District Clerks
Reviewed By: Alexis Bonilla

**C-0772-17-E**

benefit of the doubt, and (3) its failure to pay for the proper repair of Plaintiff's home on which liability had become reasonably clear, which gives Plaintiff the right to recover under Section 17.46 (b)(2).

As described in this petition, Defendants represented to Plaintiff that its insurance policy, adjusting, and investigative services such as performed by Defendant Czuhajewski had characteristics or benefits that it did not have, which gives Plaintiff the right to recover under Section 17.46 (b)(5) of the DTPA;

As described in this petition, Defendants represented to Plaintiff that its insurance policy adjusting and investigative services, and specifically Defendant Czuhajewski's adjusting and investigative services were of a particular standard, quality, or grade when they were of another in violation of Section 17.46 (b)(7) of the DTPA;

As described in this petition, Defendants advertised its insurance policy, adjusting and investigative services such as Defendant Czuhajewski's estimate of damages would be fair, unbiased, and of a particular standard, with actual intent to not sell them to Plaintiff as advertised in violation of Section 17.46 (b)(9) of the DTPA;

As described in this petition, Defendants failed to disclose information concerning goods or services which were known at the time of the transaction and such failure to disclose information such as Defendants biased investigatory claims practices, was intended to induce Plaintiff into a transaction into which the Plaintiff would not have entered had the information been disclosed, which gives Plaintiff the right to recover under Section 17.46 (b)(24) of the DTPA;

Defendants have breached an express warranty that the damage caused by wind and hailstorm would be covered under the insurance policies. This breach entitles Plaintiff to recover under Sections 17.46 (b)(12) and (20) and 17.50 (a)(2) of the DTPA;

Defendants' actions, as described in this petition, are unconscionable in that it took advantage of Plaintiff's lack of knowledge, ability, and experience regarding but not limited to

Electronically Filed
2/17/2017 3:45:01 PM
Hidalgo County District Clerks
Reviewed By: Alexis Bonilla

**C-0772-17-E**

insurance procedures, claims processing, and assessment of property damage to a grossly unfair degree. Defendants' unconscionable conduct gives Plaintiff the right to relief under Section 17.50(a)(3) of the DTPA; and

Defendants' conduct, acts, omissions, and failures, as described in this petition, are unfair practices in the business of insurance in violation of Section 17.50 (a)(4) of the DTPA.

All of the above-described acts, omissions, and failures of Defendants are a producing cause of Plaintiff's damages that are described in this petition. Furthermore, Plaintiff was the intended beneficiary of Defendant Czuhajewski's grossly negligent inspection and misrepresented estimate of damage to the Property, to which Defendant Palomar incorporated the misrepresentations into the denial of at least a portion of Plaintiff's Claim. All of the above-described acts, omissions, and failures of Defendants were done knowingly and intentionally as those terms are used in the Texas Deceptive Trade Practices Act.

**D. Cause of Action for Unfair Insurance Practices**

Plaintiff re-alleges and incorporates by reference all previous and subsequent paragraphs herein.

Plaintiff incorporates all the allegations in this petition for this cause of action against Defendants under the Texas Insurance Code, including without limitation the misrepresentations made by any of the Defendants as set forth above which were made to and which did, in fact, induce Plaintiff into purchasing the Policy from Defendants. Whereas, Plaintiff has satisfied all conditions precedent to bringing this cause of action. By its acts, omissions, failures, and conduct, Defendants have engaged in unfair and deceptive acts or practices in the business of insurance in violation of 541 of the Texas Insurance Code. Such violations include, without limitation, all the conduct described in this petition plus Defendants' unreasonable delays in the investigation, adjustment, and resolution of Plaintiff's claim, Defendants' failure to pay for the damage to Plaintiff's personal property and proper repair of Plaintiff's real property on which liability had become reasonably

Electronically Filed
2/17/2017 3:45:01 PM
Hidalgo County District Clerks
Reviewed By: Alexis Bonilla

C-0772-17-E

clear; engaging in false, misleading and deceptive acts or practices in the business of insurance in this case; and misrepresenting to Plaintiff pertinent facts or policy provisions relating to the coverage at issue. They further include Defendants' failure to give Plaintiff the benefit of the doubt. Specifically, Defendants are guilty of the following unfair insurance practices:

A. Engaging in false, misleading, and deceptive acts or practices in the business of insurance in this case;

B. Engaging in unfair claims settlement practices;

C. Defendant Czuhajewski's negligently conducted an outcome oriented inspection of Plaintiff's Property resulting in misrepresentations of pertinent facts or policy provisions relating to the coverage at issue, and Defendant Palomar's incorporation of those misrepresentations in refusing to pay at least a portion of the Claim;

D. Not attempting in good faith to effectuate a prompt, fair, and equitable settlement of claims submitted in which liability has become reasonably clear;

E. Failing to affirm or deny coverage of Plaintiff's Claim within a reasonable time;

F. Refusing to pay Plaintiff's Claim without conducting a reasonable investigation with respect to the claim; and

G. Failing to provide promptly to a policyholder a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for the denial of a claim or for the offer of a company's settlement.

Defendants have also breached the Texas Insurance Code when it breached its duty of good faith and fair dealing. Defendants' conduct as described herein has resulted in Plaintiff's damages that are described in this petition.

All of the above-described acts, omissions, and failures of Defendants were done knowingly as that term is used in the Texas Insurance Code.

**E. Cause of Action for Breach of Duty of Good Faith and Fair Dealing**

Plaintiff re-alleges and incorporates by reference all previous and subsequent paragraphs herein.

Plaintiff incorporates all the allegations of the preceding paragraphs for this cause of action, including without limitation the misrepresentations made by any of the Defendants as set forth above which were made to and which did, in fact, induce Plaintiff into purchasing the Policy from

Electronically Filed
2/17/2017 3:45:01 PM
Hidalgo County District Clerks
Reviewed By: Alexis Bonilla

**C-0772-17-E**

Defendants.  By its acts, omissions, failures and conduct, Defendants have breached its common law duty of good faith and fair dealing by failing to pay the proper amounts on Plaintiff's entire Claim without any reasonable basis and by failing to conduct a reasonable investigation to determine whether there was a reasonable basis for this denial.  Defendants have also breached this duty by unreasonably delaying payment of Plaintiff's entire Claim and by failing to settle Plaintiff's Claim because Defendants knew or should have known that it was reasonably clear that the Claim was covered.  These acts, omissions, failures, and conduct of Defendants are a proximate cause of Plaintiff's damages.

**F.      Misrepresentation**

Plaintiff re-alleges and incorporates by reference all previous and subsequent paragraphs herein.

Defendants made misrepresentations as set forth above which were made to and which did, in fact, induce Plaintiff into purchasing the Policy from Defendants.  These misrepresentations were made to induce Plaintiff to purchase the Policy from Defendants, and Plaintiff did, in fact, rely on these misrepresentations in deciding to purchase the Policy from Defendants. Furthermore, Plaintiff was the intended beneficiaries of Defendant Czuhajewski's investigative services to which eventually revealed a misrepresentation of the actual damages to the Property, and Defendant Palomar incorporated those misrepresentations into the denial of at least a portion of Plaintiff's Claim.

These negligent, reckless, or intentional misrepresentations of Defendants were the proximate cause of damage to the Plaintiff.

**G.      Fraud**

Plaintiff re-alleges and incorporates by reference all previous and subsequent paragraphs herein.

Plaintiff incorporates all the allegations of the preceding paragraphs for this cause of action. Defendants by and through its agents and/or representatives made false representations, and/or false

Electronically Filed
2/17/2017 3:45:01 PM
Hidalgo County District Clerks
Reviewed By: Alexis Bonilla

C-0772-17-E

promise to Plaintiff.  These false representations and/or false promises made by Defendant Czuhajewski were material misrepresentations or omissions of fact regarding the Property damage and Policy coverage, and Defendant Palomar incorporated those misrepresentations into the continued denial of at least a portion of Plaintiff's claim.  Defendant Czuhajewski's outcome oriented investigation and biased claims process has now revealed that Defendant Palomar's representations, and/or promises were also false and were made either intentionally, recklessly, or without regard to their truth, and with the intent to induce Plaintiff into purchasing the insurance policy at issue, and accepting as true and correct the adjustment of Plaintiff's Claim. As a result of Defendants' material misrepresentations and omissions to which Plaintiff detrimentally relied upon, Plaintiff has suffered damages substantially in excess of the minimum jurisdictional limits of this Court.

The fraudulent acts and/or omissions of the Defendants, as set forth herein, are sufficient, under Chapter 41 of the Texas Civil Practices and Remedies Code, to justify the imposition of punitive damages against Defendants.  These reckless and/or intentional misrepresentations of Defendants were the proximate cause of damage to the Plaintiff.

## VIII.  WAIVER AND ESTOPPEL

Defendants have waived and are estopped from asserting any coverage defenses, conditions, exclusions, or exceptions to coverage not contained in any reservation of rights letter to Plaintiff.

## IX.  DAMAGES

The above described acts, omissions, failures and conduct of Defendant has caused Plaintiff's damages, which include, without limitation, the cost to properly repair Plaintiff's real property and any investigative and/or engineering fees incurred in the claim.  Plaintiff is also entitled to recover consequential damages from Defendant's breach of contract. Furthermore, Plaintiff has suffered independent injuries due mental anguish, and also due to the increase in the

Electronically Filed
2/17/2017 3:45:01 PM
Hidalgo County District Clerks
Reviewed By: Alexis Bonilla

C-0772-17-E

costs of labor and materials to properly restore the Property to pre-loss condition from the date of loss through the pending claim. Plaintiff is also entitled to recover the amount of Plaintiff's claim plus an 18% per annum penalty on that claim against Defendant as damages under Section 542 of the Texas Insurance Code, plus prejudgment interest and attorneys' fees. All the damages described in this petition are within the jurisdictional limits of the Court.


## X.  ADDITIONAL DAMAGES

Defendants also "knowingly" and "intentionally" committed deceptive trade practices and unfair insurance practices as those terms are defined in the applicable statutes. Because of Defendants' knowing and intentional misconduct, Plaintiff is entitled to additional damages as authorized by Section 17.50(b)(1) of the DTPA. Plaintiff is further entitled to the additional damages that are authorized by Section 541 of the Texas Insurance Code.


## XI.  EXEMPLARY DAMAGES

Defendants' breach of its duty of good faith and fair dealing owed to Plaintiff was done intentionally, with a conscious indifference to the rights and welfare of Plaintiff and with "malice" as that term is defined in Chapter 41 of the Texas Civil Practice and Remedies Code. These violations by Defendants are the type of conduct which the State of Texas protects its citizen against by the imposition of exemplary damages. Therefore, Plaintiff seeks the recovery of exemplary damages in an amount to be determined by the finder of fact that is sufficient to punish Defendants for their wrongful conduct and to set an example to deter Defendants and others similarly situated from committing similar acts in the future.

Electronically Filed
2/17/2017 3:45:01 PM
Hidalgo County District Clerks
Reviewed By: Alexis Bonilla

**C-0772-17-E**

## XII.  ATTORNEYS' FEES

As a result of Defendants' conduct that is described in this petition, Plaintiff has been forced to retain the undersigned attorneys to prosecute this action and have agreed to pay reasonable attorneys' fees.  Plaintiff is entitled to recover these attorneys' fees under Chapter 38 of the Texas Civil Practices and Remedies Code, Sections 541 and 542 of the Texas Insurance Code, and Section 17.50 of the DTPA.

## XIII. JURY DEMAND

Plaintiff asserts Plaintiff's right to a trial by jury, under Texas Constitution Article 1, Section 15, and makes this demand for a jury trial at least 30 days before the date this case is set for trial, in accordance with Texas Rule of Civil Procedure 216.  Plaintiff tenders the fee of $30.00, as required by Texas Government Code Section 51.604.

## XIV. REQUEST FOR DISCLOSURE

Defendants, within 50 days after service of this Petition, are requested to furnish the information and material described in Texas Rules of Civil Procedure 190.2(6) and 194.2.

## XV. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff pray that Defendants be cited to appear and answer herein, and that upon trial hereof, said Plaintiff has and will recover such sums as would reasonably and justly compensate them in accordance with the rules of law and procedure, both as to actual damages, consequential damages, treble damages under the Texas Insurance Code and Texas Deceptive Trade Practices Act, and all punitive, additional, and exemplary damages as may be found.  In addition, Plaintiff request the award of attorneys' fees for the trial and any appeal of this case, for all costs of court, for prejudgment and post-judgment interest as allowed by law, and

Electronically Filed
2/17/2017 3:45:01 PM
Hidalgo County District Clerks
Reviewed By: Alexis Bonilla

C-0772-17-E

for any other and further relief, at law or in equity, to which he may show himself to be justly

entitled.

Respectfully submitted,

**WAYNE WRIGHT, LLP**
5707 Interstate Ten West
San Antonio, Texas 78201
(210) 734-7077 (Telephone)
(210) 734-9965 (Facsimile)

By:  /s/   Brent L. Klender    /s/
     **BRENT L. KLENDER**
     **bklender@waynewright.com**
     **Texas State Bar No. 24095204**

     HAROLD MCCALL
     hmccall@waynewright.com
     Texas State Bar No. 24054279

     DON CROOK
     dcrook@waynewright.com
     Texas State Bar No. 00783901
     **ATTORNEYS FOR PLAINTIFF**

C-0772-17-E

# Wellington

June 4, 2015

IntegraClaim, LLC
Texas Public Adjuster License #1803950
3911 N 10th Street, Suite N
McAllen, TX. 78501

RE:    Claim Number:          PSI-68475
       Policy Number:         PIC-428
       Insured:               Nidia Reyna
       Loss Location:         2516 Gull Ave. McAllen, TX. 78504
       Date of Loss:          March 26, 2015
       Insurance Company:     Palomar Specialty Insurance Company

Dear Ms. Soto:

Per your request, enclosed is a copy of the insurance policy for Nidia Reyna.

We request that you contact the undersigned as soon as possible to discuss this claim.

Sincerely,

Tory Warren
817-697-3565
claims@wellingtoninsgroup.com

Wellington Claim Service, Inc.
P.O. Box 1116, Fort Worth, TX  76101
Phone: 817-738-1878 • 800-447-6465 Fax: 817-732-2131
www.WellingtonInsGroup.com

C-0772-17-E



**Wellington Risk Insurance Agency, Inc.**
P.O. Box 230 • Fort Worth, TX 76101
817-732-2111 • 800-880-0474
www.WellingtonInsGroup.com

02/22/2015

NIDIA REYNA
2516 GULL AVE
MCALLEN,TX 78504-4325

Re: PIC 000000428

Dear: NIDIA REYNA

Wellington Risk Insurance Agency, Inc. manages your new insurance policy on behalf of your agency. Thank you for entrusting Wellington with your insurance needs. For your convenience, Wellington offers an online option to view policy documents, make payments or establish a recurring payment plan, file claims and request policy changes. Visit us at www.WellingtonInsGroup.com/MyWellington to get started.

Enclosed please find documents relating to your new insurance policy, including your Declaration's Page, Policy and any Endorsements. Please take this opportunity to review your coverage and related documents. Any questions concerning these documents or requests to change the stated coverage should be promptly directed to your Agent:

Agent Phone:(956)687-5830
SANCHEZ INSURANCE AGENCY
2538 Pecan Blvd
Mcallen, TX 78501

We appreciate the opportunity to be of service.

NB0001

Insured Copy

02/22/2015   00007160745

C-0772-17-E

 **Texas Department of Insurance**
Property & Casualty Program – **Personal Lines Division,** Mail Code 104-1A
333 Guadalupe • P. O. Box 149104, Austin, Texas 78714-9104
512-322-2266 telephone • 512-490-1015 fax • www.tdi.state.tx.us

## USE OF CREDIT INFORMATION DISCLOSURE

Insurer's Name    Palomar Specialty Ins Co.
Address           6801 CALMONT AVE
                  FORT WORTH, TX 76116
Telephone Number *(toll free if available)* 1-800-880-0474

We ☒will ☐ will not *(choose one)* obtain and use credit information on you or any other member(s) of your household as a part of the insurance credit scoring process.

If you have any questions regarding this disclosure, contact the insurer at the above address or phone number. For information or other questions, contact the Texas Department of Insurance at 1-800-252-3439 or P.O. Box 149091, MC 104-1A, Austin, Texas 78714.

*Section 559.053 of the Texas Insurance Code requires an insurer or its agents to disclose to its customers whether credit information will be obtained on the applicant or insured or on any other member(s) of the applicant's or insured's household and used as part of the insurance credit scoring process.*

*If credit information is obtained or used on the applicant or insured, or on any member of the applicant's or insured's household, the insurer shall disclose to the applicant the name of each person on whom credit information was obtained or used and how each person's credit information was used to underwrite or rate the policy. An insurer may provide this information with this disclosure or in a separate notice.*

*Adverse effect means an action taken by an insurer in connection with the underwriting of insurance for a consumer that results in the denial of coverage, the cancellation or nonrenewal of coverage, or the offer to and acceptance by a consumer of a policy form, premium rate, or deductible other than the policy form, premium rate, or deductible for which the consumer specifically applied.*

*Credit information is any credit related information derived from a credit report itself, or provided in an application for personal insurance. The term does not include information that is not credit-related, regardless of whether the information is contained in a credit report or in an application for insurance coverage or is used to compute a credit score.*

*Credit score or insurance score is a number or a rating derived from a mathematical formula, computer application, model, or other process that is based on credit information and used to predict the future insurance loss exposure of a consumer.*

### SUMMARY OF CONSUMER PROTECTIONS CONTAINED IN CHAPTER 559

**PROHIBITED USE OF CREDIT INFORMATION.** *An insurer may not:*
*(1) use a credit score that is computed using factors that constitute unfair discrimination;*

C-0772-17-E

(2) deny, cancel, or nonrenew a policy of personal insurance solely on the basis of credit information without consideration of any other applicable underwriting factor independent of credit information; or (3) take an action that results in an adverse effect against a consumer because the consumer does not have a credit card account without consideration of any other applicable factor independent of credit information.

An insurer may not consider an absence of credit information or an inability to determine credit information for an applicant for insurance coverage or insured as a factor in underwriting or rating an insurance policy unless the insurer:
(1) has statistical, actuarial, or reasonable underwriting information that:  (A)  is reasonably related to actual or anticipated loss experience; and (B)  shows that the absence of credit information could result in actual or anticipated loss differences;
(2) treats the consumer as if the applicant for insurance coverage or insured had neutral credit information, as defined by the insurer; or
(3) excludes the use of credit information as a factor in underwriting and uses only other underwriting criteria.

**NEGATIVE FACTORS.**  An insurer may not use any of the following as a negative factor in any credit scoring methodology or in reviewing credit information to underwrite or rate a policy of personal insurance:
    (1) a credit inquiry that is not initiated by the consumer;
    (2) an inquiry relating to insurance coverage, if so identified on a consumer's   credit report; or
    (3) a collection account with a medical industry code, if so identified on the consumer's credit report.

Multiple lender inquiries made within 30 days of a prior inquiry, if coded by the consumer reporting agency on the consumer's credit report as from the home mortgage or motor vehicle lending industry, shall be considered by an insurer as only one inquiry.

**EFFECT OF EXTRAORDINARY EVENTS.**  An insurer shall, on written request from an applicant for insurance coverage or an insured, provide reasonable exceptions to the insurer's rates, rating classifications, or underwriting rules for a consumer whose credit information has been directly influenced by a catastrophic illness or injury, by the death of a spouse, child, or parent, by temporary  loss of employment, by divorce, or by identity theft.  In such a case, the insurer may consider only credit information not affected by the event or shall assign a neutral credit score.

An insurer may require reasonable written and independently verifiable documentation of the event and the effect of the event on the person's credit before granting an exception.  An insurer is not required to consider repeated events or events the insurer reconsidered previously as an extraordinary event.

An insurer may also consider granting an exception to an applicant for insurance coverage or an insured for an extraordinary event not listed in this section.  An insurer is not out of compliance with any law or rule relating to underwriting, rating, or rate filing as a result of granting an exception under this article.

**NOTICE OF ACTION RESULTING IN ADVERSE EFFECT.**  If an insurer takes an action resulting in an adverse effect with respect to an applicant for  insurance coverage or insured based in whole or in part on information contained in a credit report, the insurer must provide to the applicant or insured within 30 days certain information regarding how an applicant or insured may verify and dispute information contained in a credit report.

**DISPUTE RESOLUTION; ERROR CORRECTION.**  If it is determined through the dispute resolution process established under Section 611(a)(5), Fair Credit Reporting Act(15 U.S.C. Section 1681i), as

PIC 000000428

C-0772-17-E

amended, that the credit information of a current insured was inaccurate or incomplete or could not be verified and the insurer receives notice of that determination from the consumer reporting agency or from the insured, the insurer shall re-underwrite and re-rate the insured not later than the 30th day after the date of receipt of the notice.

After re-underwriting or re-rating the insured, the insurer shall make any adjustments necessary within 30 days, consistent with the insurer's underwriting and rating guidelines. If an insurer determines that the insured has overpaid premium, the insurer shall credit the amount of overpayment. The insurer shall compute the overpayment back to the shorter of the last 12 months of coverage; or the actual policy period.

PIC 000000428                    Insured Copy

C-0772-17-E

## CONSUMER BILL OF RIGHTS
### Homeowners, Dwelling and Renters Insurance

AVISO: Este documento es un resumen de sus derechos como asegurado. Usted tiene el derecho a llamar a su compañía y pedir una copia de estos derechos en español.

### What is the Bill of Rights?

This Bill of Rights is a summary of your rights and does not become a part of your policy. The Texas Department of Insurance (TDI) adopted the Bill of Rights and requires insurance companies to provide you a copy when they issue your policy.

Texas law gives you certain rights regarding your homeowners, dwelling and renters insurance. This Bill of Rights identifies your rights specified by rule or by state statute, but it does not include all of your rights. Also, some exceptions to the rights are not listed here. Legislative or regulatory changes to statutes or rules may affect your rights as an insured. If your agent, company, or adjuster tells you that one of these rights does not apply to you, contact TDI's Consumer Protection Program at 1-800-252-3439 (512-463-6515 in Austin), by mail at Mail Code 111-1A, P.O. Box 149091, Austin, TX 78714-9091, or by email at ConsumerProtection@tdi.state.tx.us. For a list of the specific law(s) and/or rule(s) summarized in each item of this Bill of Rights, or if you have questions or comments contact the Office of Public Insurance Counsel (OPIC) toll free at 1-877-611-6742, by mail at 333 Guadalupe, Suite 3-120, Austin, TX 78701, or visit the OPIC website at www.opic.state.tx.us.

This Bill of Rights does not address your responsibilities. Your responsibilities concerning your insurance can be found in your policy. Failure to meet your obligations may affect your rights.

### Getting information from the Department of Insurance and your insurance company

**1. INFORMATION FROM TDI.** You have the right to call TDI free of charge at 1-800-252-3439 or 512-463-6515 in Austin to learn more about:
- your rights as an insurance consumer;
- the license status of an insurance company or agent;
- the financial condition of an insurance company;
- the complaint ratio and type of consumer complaints filed against an insurance company;
- use of credit information by insurance companies, including which insurance companies use it and access to each company's credit scoring model;
- an insurance company's rates filed with the state;
- an insurance company's underwriting guidelines (subject to exemptions in the Public Information Act, also known as the Open Records Act);

C-0772-17-E

- the Texas FAIR Plan, designed to help consumers who have been denied coverage by at least two insurance companies; and
- other consumer concerns.

You can also find some of this information on the TDI website at www.tdi.texas.gov.

At www.helpinsure.com, Texans can find more detailed information on their current and prospective insurers. TDI, in conjunction with OPIC, maintains this website to help Texans shop for residential property insurance and personal automobile insurance. For companies writing in Texas that are in the top 25 company groups nationally, the site also includes:

- a list of insurers by county and/or ZIP code;
- detailed contact information for each insurer;
- sample rates and a brief history of increases and/or decreases in the rates;
- policy form comparisons;
- a list of policy forms, exclusions, endorsements, and discounts offered by each insurer; and
- nonconfidential disciplinary actions against each insurer.

**2.  *INFORMATION FROM YOUR INSURANCE COMPANY*.**  You have the right to a toll-free number to call your insurance company free of charge with questions or complaints. You can find this number on a notice accompanying your policy.  This requirement does not apply to small insurance companies.

### What you should know before you buy insurance

**3.  *PROHIBITED STATEMENTS*.**  Your insurance company or agent is prohibited from making false, misleading, or deceptive statements to you relating to insurance.

**4.  *LENDER-REQUIRED INSURANCE*.**  A lender cannot require you to purchase insurance on your property in an amount that exceeds the replacement cost of the dwelling and its contents as a condition of financing a residential mortgage or providing other financing arrangements for the property, regardless of the amount of the mortgage or other financing arrangements.  In determining the replacement cost of the dwelling, a lender cannot include the fair market value of the land on which a dwelling is located.

**5.  *CREDIT INFORMATION*.**  An insurance company cannot deny you insurance solely on the basis of credit information.  Insurers who use credit information must also consider other underwriting factors independent of credit information when deciding whether to offer coverage.  (For additional information see the section of this Bill of Rights titled *What you should know about insurance companies' use of credit information*.)

**6.  *APPLIANCE-RELATED WATER DAMAGE CLAIMS*.**  An insurance company cannot deny you insurance or increase your premium based on a prior appliance-related water damage claim if:

2

C-0772-17-E

- the damage has been properly repaired or remediated; and
- the repair or remediation was inspected and certified.

NOTE: A company can use an appliance-related water damage claim if you file three or more such claims in a 3-year period and the company has paid the claims. A claim includes a claim filed by you or a claim filed on your property.

**7. *WATER CLAIMS/MOLD DAMAGE OR CLAIMS*.** An insurance company cannot deny you insurance based solely on a single prior water damage claim. An insurance company also cannot deny you insurance because of prior mold damage or a prior mold claim if:
- the damage or claim was properly repaired or remediated; and
- the repair or remediation was inspected and certified.

NOTE: A claim includes a claim filed by you or a claim filed on your property.

**8. *PROPERTY CONDITION*.** Voluntary Inspection Program: You have the right to have an independent inspection of your property by any person authorized by the Commissioner of Insurance to perform inspections. Once the inspector determines that your property meets certain minimum requirements and issues you an inspection certificate, no insurer may deny coverage based on property conditions without reinspecting your property. If an insurer then denies coverage, the insurer must identify, in writing, the specific problem(s) that makes your property uninsurable. You can find a list of available inspectors on the TDI website at www.tdi.texas.gov/company/vipagnt.html or you can contact TDI for the list directly at 1-800-252-3439.

**9. *SAFETY NET*.** You may have the right to buy basic homeowners insurance through the Texas Fair Access to Insurance Requirements Plan, also known as the Texas FAIR Plan, if you have been denied coverage by two insurance companies. Your property must meet certain requirements, and eligibility for FAIR Plan coverage must be re-established every two years. You can access a list of insurance agents who are authorized to sell this coverage on the Texas FAIR Plan Association website at www.texasfairplan.org or by calling 1-800-979-6440 (512-505-2200 in Austin).

**10. *WINDSTORM COVERAGE*.** For property located in areas designated by the Commissioner in certain counties on or near the coast, you may have the right to buy windstorm and hail coverage from the Texas Windstorm Insurance Association (TWIA), if you have been denied windstorm coverage by one insurance company in the standard market currently providing windstorm coverage. Your property must meet certain requirements, and eligibility for TWIA coverage must be re-established every three years. You may have to re-establish eligibility sooner than every three years if you have made any repairs or alterations to your home. Windstorm coverage through TWIA is limited to a maximum amount set each year by the Commissioner of Insurance. This right applies whether or not you buy other insurance for your house. In all other counties your homeowners or dwelling policy includes windstorm and hail coverage unless you request

3

C-0772-17-E

that this coverage be removed from your policy.

NOTE: If you live in a certain flood zone (Zone V, Zone VE and Zone V1-130) and your dwelling was constructed, altered, remodeled, or enlarged after September 1, 2009, you must purchase flood insurance through the National Flood Insurance Program (NFIP) in order to be eligible to purchase windstorm coverage through TWIA.  However, if NFIP does not provide flood insurance in your area, you are not required to purchase it.

**11.   *ELECTRONIC PAYMENTS*.** If you authorize your insurer to withdraw your premium payments directly from your financial institution, including your escrow account, your insurer cannot increase the amount withdrawn unless:

- the insurer notifies you by U.S. mail of the increase in premium at least 30 days prior to its effective date; and
- you do not notify the insurer that you object to the increase in the amount to be withdrawn at least five days prior to the increase.

The notice provided by the insurer must include a toll-free number, a mailing address and an email address (if applicable), through which you can contact the insurer to object to the increase.

NOTE: This does not apply to premium increases specifically scheduled in the original policy, to increases based on policy changes you request, or to an increase that is less than $10 or 10 percent of the previous month's payment.

**12.   *NOTICE OF REDUCED COVERAGE*.**  If an insurer uses an endorsement to reduce the amount of coverage provided by your policy, the insurer must give you a written explanation of the change made by the endorsement.  The insurer must provide the explanation not later than the 30th day before the effective date of the new or renewal policy.  An insurance company cannot reduce coverage during the policy period unless you request the change.  If you request the change, the company is not required to provide notice.

**13.   *NOTICE OF PREMIUM INCREASE*.**  If your insurer intends to increase your premium by 10 percent or more upon renewal, the insurer must send you notice of the rate increase at least 30 days before your renewal date.

**14.   *EXPLANATION OF DENIAL*.**  Upon request, you have the right to be told in writing why you have been denied coverage.  The written statement must fully explain the decision, including the precise incidents, circumstances, or risk factors that disqualified you.  It must also state the sources of information used.

NOTE: The obligation to provide a written explanation applies to insurance companies directly.  An independent agent does not have a specific duty to quote the lowest possible rate to a consumer or to provide a written statement explaining why the agent did not offer the consumer the lowest possible rate.

**15. *CUSTOMER INQUIRY*.** An insurance company cannot use a customer inquiry as a

C-0772-17-E

basis for denying you coverage or determining your premium.

NOTE:  A customer inquiry includes:
- general questions about your policy;
- questions concerning the company's claims filing process; and
- questions about whether the policy will cover a loss unless the question concerns specific damage that has occurred and that results in an investigation or claim.

**16.  *RATE DIFFERENTIAL WITHIN A COUNTY*.**  If an insurer subdivides a county for the purposes of charging different rates for each subdivision, the difference between the lowest and the highest rate cannot exceed 15 percent unless actuarially justified.

**17.  *RIGHT TO PRIVACY*.**  You have the right to prevent an insurance company, agent, adjuster, or financial institution from disclosing your personal financial information to companies that are not affiliated with the insurance company or financial institution. Some examples are income, social security number, credit history, and premium payment history.

If you apply for a policy, the insurance company or financial institution must notify you if it intends to share financial information about you and give you at least 30 days to refuse.  This refusal is called "opting out."  If you buy a policy, the insurance company or financial institution must tell you what information it collects about you and whether it intends to share any of the information, and give you at least 30 days to opt out.  Agents and adjusters who intend to share your information with anyone other than the insurance company or financial institution must give you similar notices.

You can opt out at any time.  Your decision to opt out remains in effect unless you revoke it.

These protections do not apply to information:
- publicly available elsewhere;
- insurance companies or financial institutions are required by law to disclose; or
- insurance companies or financial institutions must share in order to conduct ordinary business activities.

### What you should know about cancellation and nonrenewal

**Cancellation** means that **before the end** of the policy period the insurance company:
- terminates the policy;
- reduces or restricts coverage under the policy; or
- refuses to provide additional coverage to which you are entitled under the policy.

**Refusal to renew** and **nonrenewal** mean the policy terminates **at the end** of the policy period.

The **policy period** is shown on the declarations page at the front of your policy.

5

C-0772-17-E

**18.  *LIMITATION ON CANCELLATION FOR HOMEOWNERS AND RENTERS POLICIES.***  After your initial homeowners or renters policy with your company has been in effect for 60 days or more, that insurance company cannot cancel your policy unless:

- you don't pay your premium when due;
- you file a fraudulent claim;
- there is an increase in the hazard covered by the policy that is within your control and results in an increase in the premium rate of your policy; or
- TDI determines continuation of the policy would result in violation of insurance laws.

If your policy has been in effect for less than 60 days, your insurance company cannot cancel your policy unless:

- one of the reasons listed above applies;
- the insurance company identifies a condition that:
  - creates an increase in hazard;
  - was not disclosed on your application; and
  - is not the subject of a prior claim; or
- the insurance company rejects a required inspection report within 10 days after receiving the report.  The report must be completed by a licensed or authorized inspector and cannot be more than 90 days old.

**19.  *LIMITATION ON CANCELLATION FOR DWELLING POLICIES.***  After your initial dwelling policy with your company has been in effect for 90 days, that insurance company cannot cancel your policy unless:

- you don't pay your premium when due;
- you file a fraudulent claim;
- there is an increase in the hazard covered by the policy that is within your control and results in an increase in the premium rate of your policy; or
- TDI determines continuation of the policy would result in violation of insurance laws.

**20.  *NOTICE OF CANCELLATION.***  To cancel your policy, your insurance company must mail notice at least 10 days prior to the effective date of the cancellation.  Your policy may provide for even greater notice.

**21.  *POLICYHOLDER'S RIGHT TO CANCEL.***  You have the right to cancel your policy at any time and receive a refund of the remaining premium.

**22.  *CHANGE IN MARITAL STATUS.***  If your marital status changes, you have the right to continue your insurance coverage.  You have a right to a new policy in your name with coverages that most nearly approximate the coverages of your prior policy, including the same expiration date.  The insurance company cannot date the new policy so that a gap in coverage occurs.

6

C-0772-17-E

**23.  USE OF CLAIMS HISTORY TO NONRENEW OR DETERMINE RENEWAL PREMIUM.**   Your insurance company cannot use claims you filed as a basis to nonrenew your policy unless:
- you file three or more claims in any 3-year period; and
- your insurer notified you in writing after the second claim that filing a third claim could result in nonrenewal of your policy.

Your insurance company cannot use the following types of claims to determine the number of claims you have filed or to determine your premium if your policy is renewed:
- claims for damage from natural causes, including weather-related damage;
- appliance-related water damage claims where the repairs have been inspected and certified; or
- claims filed but not paid or payable under the policy.

NOTE: An insurance company can count appliance-related claims if three or more such claims are filed and paid within a 3-year period.

**24.  USE OF CREDIT INFORMATION TO NONRENEW.**   An insurance company cannot refuse to renew your policy solely on the basis of credit information.  Insurers who use credit information must also consider other underwriting factors independent of credit information when deciding whether to renew coverage.    (For additional information see the section of this Bill of Rights titled *What you should know about insurance companies' use of credit information.*)

**25.  NOTICE OF CHANGE IN POLICY FORM.**   Your insurer must notify you in writing of any difference between your current policy and each policy offered to you when the policy renews.  In certain instances your insurance company must also provide a comparison between the policy offered and policies adopted by the Commissioner of Insurance.

**26.  NOTICE OF NONRENEWAL.**   If the insurance company does not mail you notice of nonrenewal at least 30 days before your policy expires, you have the right to require the insurance company to renew your policy.

**27.  EXPLANATION OF CANCELLATION OR NONRENEWAL.**   Upon request, you have the right to a written explanation of an insurance company's decision to cancel or nonrenew your policy.  The written statement must fully explain the decision, including the precise incidents, circumstances, or risk factors that disqualified you.  It must also state the sources of information used.

### What you should know when you file a claim

**28.  FAIR TREATMENT.**   You have the right to be treated fairly and honestly when you make a claim.  If you believe an insurance company has treated you unfairly, call TDI at 1-800-252-3439 (512-463-6515 in Austin) or download a complaint form from the TDI website at www.tdi.texas.gov.   You can complete a complaint form on-line via the

7

C-0772-17-E

internet or fax a completed form to TDI at 512-475-1771.

**29. *SETTLEMENT OFFER.*** You have the right to reject any settlement amount, including any unfair valuation, offered by the insurance company. If you reject a settlement offer, your options include continuing to negotiate with the insurer or pursuing legal remedies, such as mediation, arbitration, or filing a lawsuit. You have the right to have your home repaired by the repair person of your choice.

**30. *EXPLANATION OF CLAIM DENIAL.*** Your insurance company must tell you in writing why your claim or part of your claim was denied.

**31. *TIMEFRAMES FOR CLAIM PROCESSING AND PAYMENT.*** When you file a claim on your own policy, you have the right to have your claim processed and paid promptly. If the insurance company fails to meet required claims processing and payment deadlines, you have the right to collect 18 percent annual interest and attorney's fees in addition to your claim amount.

Generally, within **15 calendar days,** your insurance company must acknowledge receipt of your claim and request any additional information reasonably related to your claim. Within **15 business days** (30 days if the company reasonably suspects arson) after receipt of all requested information, the company must approve or deny your claim in writing. The law allows the insurance company to extend this deadline up to **45 days** if it notifies you that more time is needed and tells you why.

After notifying you that your claim is approved, your insurance company must pay the claim **within five business days.**

If your claim results from a weather-related catastrophe or other major natural disaster as defined by TDI, these claims handling deadlines are extended for an additional 15 days.

**32. *RELEASE OF CLAIM FUNDS.*** Often an insurance company will make a claim check payable to you and your mortgage company or other lender and will send it to the lender. In that case, the lender must notify you within 10 days of receipt of the check and tell you what you must do to get the funds released to you.

Once you request the funds from the lender, within 10 days the lender must:
- release the money to you; or
- tell you in specific detail what you must do to get the money released.

If the lender does not provide the notices mentioned above or pay the money to you after all requirements have been met, the lender must pay you interest on the money at 10 percent per year from the time the payment or the notices were due.

**33. *NOTICE OF LIABILITY CLAIM SETTLEMENT.*** Your insurance company must notify you if it intends to pay a liability claim against your policy. The company must notify you in writing of an initial offer to compromise or settle a claim against you no

8

C-0772-17-E

later than the 10th day after the date the offer is made.  The company must notify you in writing of any settlement of a claim against you no later than the 30th day after the date of the settlement.

**34.** *INFORMATION NOT REQUIRED FOR CLAIM PROCESSING.*  You have the right to refuse to provide your insurance company with information that does not relate to your claim.  In addition, you may refuse to provide your federal income tax records unless your insurer gets a court order or your claim involves lost income or a fire loss.

### What you should know about prohibited discrimination

**35.** *PROTECTED CLASSES.*  An insurance company cannot discriminate against you by refusing to insure you; limiting the amount, extent or kind of coverage available to you; charging you a different rate for the same coverage; or refusing to renew your policy:

- because of race, color, religion, gender, marital status, disability or partial disability, or national origin; or
- unless justified by actual or anticipated loss experience, because of age or geographic location.

**36.** *AGE OF HOUSE.*  An insurance company cannot refuse to insure your property based on the age of your house.  However, an insurance company may refuse to sell you insurance coverage based on the condition of your property, including the condition of your plumbing, heating, air conditioning, wiring, and roof.

**37.** *VALUE OF PROPERTY.*  An insurance company cannot refuse to insure your property because the value is too low or because the company has established minimum coverage amounts.

**38.** *UNDERWRITING GUIDELINES.*  Underwriting guidelines may not be unfairly discriminatory and must be based on sound actuarial principles.

**39.** *EQUAL TREATMENT.*  Unless based on sound actuarial principles, an insurance company may not treat you differently from other individuals of the same class and essentially the same hazard.  If you sustain economic damages as a result of such unfair discrimination, you have the right to sue that insurance company in Travis County District Court.

If your suit prevails, you may recover economic damages, court costs and attorney and necessary expert witness fees.  If the court finds the insurance company knowingly violated your rights, it may award up to an additional $25,000 per claimant.

You must bring the suit on or before the second anniversary of the date you were denied insurance or the unfair act occurred or the date you reasonably should have discovered the occurrence of the unfair act.  If the court determines your suit was groundless and you brought the lawsuit in bad faith, or brought it for the purposes of harassment, you will be

9

C-0772-17-E

required to pay the insurance company's court costs and attorney fees.

## What you should know about insurance companies' use of credit information

**40. *REQUIRED DISCLOSURE.*** If an insurance company uses credit information to make underwriting or rating decisions, the company must provide you a disclosure statement within 10 days after receiving your completed application for insurance.

The disclosure indicates whether the insurer will obtain and use your credit information and lists your specific legal rights, including:
- credit information insurance companies cannot use against you;
- how you can get reasonable exceptions that your insurer is required to make to its use of credit information if certain life events, such as divorce, death of a close family member, or identity theft, hurt your credit;
- the notice* an insurer must send you when making a credit-based decision that harms your ability to get or keep insurance or requires you to pay a higher premium; and
- how you can dispute credit information and require an insurer to re-rate your policy if the rate was increased because of inaccurate or unverifiable credit information.

* The notice must include a description of up to four primary factors that influenced the action taken by the insurer.

Insurers must use the disclosure form (CD-1) adopted by the Commissioner or an equivalent disclosure form filed prior to use with TDI. The CD-1 is available at www.tdi.texas.gov/forms/pcpersonal/pc328crdtds.pdf or by calling 1-800-252-3439. Additional information regarding insurers' use of credit information is available at www.tdi.texas.gov/credit/credit.html.

## What you should know about enforcing your rights

**41. *FILING COMPLAINTS.*** You have the right to complain to TDI about any insurance company and/or insurance matter and to receive a prompt investigation and response to your complaint. To do so, you should:
- call TDI's ***Consumer Help Line*** at 1-800-252-3439, (512-463-6515 in Austin) for service in both English and Spanish;
- write to the Texas Department of Insurance, Consumer Protection, Mail Code 111-1A, P.O. Box 149091, Austin, Texas 78714-9091;
- email TDI at ConsumerProtection@tdi.state.tx.us;
- fax your complaint to 512-475-1771;
- download or complete a complaint form online from the TDI website at www.tdi.texas.gov; or

10

C-0772-17-E

- call the TDI Publications/Complaint Form order line at 1-800-599-SHOP (7467), (512-305-7211 in Austin). The order line is available 24 hours a day, 7 days a week.

**NOTE**:  TDI offers interpreter services and publications in alternate formats.  Persons needing more information in alternate layouts or languages can call the *TDI Consumer Help Line* listed above.

**42.  *RIGHT TO SUE.***  If an insurance company violates your rights, you may be able to sue that company in court, including small claims court, with or without an attorney.

**43.  *BURDEN OF PROOF.***  If you sue to recover under your insurance policy, the insurance company has the burden of proof as to any application of an exclusion in the policy and any exception to or other avoidance of coverage claimed by the insurer.

**44.  *REQUESTING NEW RULES.***  You have the right to ask in writing that TDI make or change rules on any residential property insurance issue that concerns you.  Send your written request to: Texas Department of Insurance, Attn: Commissioner (113-2A), P.O. Box 149104, Austin, TX 78714-9104.

11

C-0772-17-E

# PRIVACY NOTICE

Palomar Specialty Insurance Company pledges to treat the information of our policyholders and other consumers responsibly. We value you as a customer and respect your right to privacy, and we recognize that you purchase our products and services because you trust that we will stand behind our promises. We never sell your personal information, and we do not share it with non-affiliated third parties for marketing purposes.

## THE INFORMATION WE COLLECT
We may collect personal information about you from the following sources:
- applications and other forms
- our research to verify a claim
- your transactions and experiences with us and others
- consumer reporting agencies, medical providers, and others.

Personal information may include but is not limited to your name, Social Security number, date of birth, driver's license number, medical information, credit or debit card numbers, or bank account number.

## THE INFORMATION WE DISCLOSE
We safeguard information about our policyholders, former policyholders, and other consumers, and we disclose it only as permitted or required by law. We use the information we collect to process and service your policy and resolve claims. We may disclose it to persons or organizations as necessary to perform transactions that you request or authorize. For example, we may exchange information about you with our agents, investigators, appraisers, attorneys and other people involved in processing your application and servicing your policy or claims. Specifically, we may disclose the following to entities that perform administrative services on our behalf or as required or permitted by law for legal and regulatory purposes:
- Information we receive from you on applications or other forms, such as your name, address, beneficiaries, Social Security number, family member information, assets, income, and property locations and values
- Information regarding your transactions with us or others, such as your account balance, policy coverage, payment history, the premium you pay, and claims information
- Information we receive from consumer reporting agencies and other sources, such as your creditworthiness and medical and employment information.

We may also share your information for other permitted purposes, including:
- communicating with another insurance company in the event of a claim
- complying with requests from federal, state or other governmental, regulatory, or law enforcement agencies if required by law
- helping insurance-support organizations detect and prevent fraud
- with state insurance departments or other governmental or law enforcement authorities if required by law to protect our legal interests or in cases of suspected fraud or illegal activities; or
- if ordered by a subpoena, search warrant, or other court order.

## CONFIDENTIALITY AND SECURITY
We maintain physical, electronic and procedural safeguards to ensure that your personal information is treated responsibly and in accordance with our privacy policy and applicable data security regulations. We restrict access to that information within our organization to employees who need to know it to provide products and services to you or to conduct Palomar Specialty Insurance Company business. Employees who have access to your personal information may use it only for legitimate business purposes.

YOU DO NOT NEED TO DO ANYTHING IN RESPONSE TO THIS NOTICE
THIS NOTICE IS MERELY TO INFORM YOU ABOUT OUR
PRIVACY POLICIES AND PRACTICES

PSI-PS

C-0772-17-E



**Wellington Risk Insurance Agency, Inc.**
P.O. Box 230 • Fort Worth, TX 76101
817-732-2111 • 800-880-0474
www.WellingtonInsGroup.com

## NOTICE OF WELLINGTON'S PRIVACY POLICIES AND PRACTICES

### Wellington's Commitment To Privacy

Wellington Risk Insurance Agency, Inc. ("Wellington") is a properly licensed "managing general agent" that processed your residential property insurance policy(ies) on behalf of another insurance company. Wellington values this customer relationship and is committed to protecting the confidentiality of your nonpublic personal information. This Notice informs you of Wellington's privacy policies and practices.

### Collecting Information

Wellington collects nonpublic personal information ("NPI") about you from the following sources:

- Information we receive from you on applications or other forms, over the telephone, through the mail, and from your browser when you and/or your agent visit our website (including but not limited to: name, address, property description, date of birth, social security number, driver's license number, phone number, e-mail address, employment status);
- Information we obtain from your transactions with us, our affiliates or others (including but not limited to: policy coverages, premiums, payment history, loss and/or claim history);
- Information we receive from consumer reports (including but not limited to: income and asset information, credit history); and
- Information we receive from third parties, such as employers, insurance agents or other insurance companies that provide(d) you financial products or services (including but not limited to: motor vehicle reports, claim reports, demographic data, medical information and/or history).

### Sharing Information

Wellington may share all of the collected NPI as permitted by law with its affiliates and the insurance company that issued your residential insurance policy(ies)—and to the extent you seek or are receiving a multiple-line insurance discount, with your automobile insurance carrier—in order to process your application or claim, administer your account, provide you with a service, or administer our business (including detection of fraud). Wellington's affiliates include: **Wellington Adjusting Service, Inc.; Wellington Claim Service, Inc.; Wellington Insurance Company, Inc.; Wellington Insurance Services, Inc.; and Wellington Premium Finance, Inc.**

PIC 000000428                                        02/22/2015

C-0772-17-E

### Sharing Information...continued

It may be necessary for Wellington to seek placement of your residential property insurance policy(ies) with one or more different insurance companies. In order to offer continual residential property insurance coverage through new insurance companies without interruption to you, Wellington may share all of the collected NPI as permitted by law with *non-affiliated* insurance companies. If you prefer that Wellington not disclose NPI for this purpose, you may **opt-out** at any time by calling Wellington toll-free at 800-880-0474. Wellington will presume your agreement to this disclosure unless you call within **thirty (30) days** from the date this Notice was mailed.

### Safeguarding Information

Except as otherwise described in this Notice, Wellington restricts access to the collected NPI to Wellington's employees and the employees of affiliates who need to know that information to provide products or services to you. Wellington maintains physical, electronic, and procedural safeguards that comply with federal regulations to guard your NPI.

Wellington will retain your information at the end of the customer relationship for a period of time for internal processing and/or information purposes, and as required by law. However, Wellington maintains the same standard of privacy for former customers as for current customers.

C-0772-17-E

# Texas Dwelling Insurance Policy

Palomar Specialty Insurance Company
888 Prospect St. Ste 105
La Jolla, CA 92037

---

THIS POLICY JACKET WITH THE HOMEOWNERS POLICY FORM, DECLARATIONS PAGE AND ENDORSEMENTS, IF ANY, ISSUED TO
FORM A PART THEREOF, COMPLETE THIS POLICY

---

C-0772-17-E

| IMPORTANT NOTICE | AVISO IMPORTANTE |
|---|---|
| To obtain information or make a complaint: | Para obtener informacion o para someter una queja: |
| You may contact your Managing General Agent at 1-800-880-0474. | Puede comunicarse con su Agente General al 1-800-880-0474. |
| You may call the Palomar Specialty Insurance Company's toll-free telephone number for information or to make a complaint at: | Usted puede llamar al numero de telefono gratis de Palomar · Specialty Insurance Company's para informacion o para someter una queja al: |

### 1-844-560-7401

| You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at: | Puede comunicarse con el Departamento de Seguros de Texas para obtener informacion acerca de companias, coberturas, derechos o quejas al: |
|---|---|

### 1-800-252-3439

You may write the Texas Department of Insurance:

Puede escribir al Departmento de Seguros de Texas:

P.O. Box 149104
Austin, TX 78714-9104
Fax: (512) 475-1771
Web: http://www.tdi.texas.gov
Email: ConsumerProtection@tdi.texas.gov

P.O. Box 149104
Austin, TX 78714-9104
Fax: (512) 475-1771
Web: http://www.tdi.texas.gov
Email: ConsumerProtection@tdi.texas.gov

| To obtain price and policy form comparisons and other information relating to residential property insurance and personal automobile insurance, you may visit the Texas Department of Insurance/ Office of Public Insurance Counsel website: | Para obtener formas de comparacion de precios y poliza y otra informacion acerca del seguro de propiedad residencial y del seguro de automóvil, visite el sitio web del Departamento de Seguros de Texas y la Oficina del Asesor Publico de Seguros: |
|---|---|

### www.helpinsure.com

### PREMIUM OR CLAIM DISPUTES:
Should you have a dispute concerning your premium or about a claim you should contact the Managing General Agent first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

### DISPUTAS SOBRE PRIMAS O RECLAMOS:
Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con el Agente General primero. Si no se resuelve la disputa, puede entonces comunicarse con al Departmento de Seguros de Texas.

### ATTACH THIS NOTICE TO YOUR POLICY:
This notice is for information only and does not become a part or condition of the attached document.

### UNA ESTE AVISO A SU POLIZA:
Este aviso es solo para proposito de informacion y no se convierte en parte o condicion del documento adjunto.

PDF-D19 (10/14)

C-0772-17-E

## QUICK REFERENCE
## TEXAS DWELLING POLICY – FORM 1

Insuring Agreement ...................................... 2

Definitions.................................................. 2

Coverage A
  Dwelling ................................................... 2
  Other Structures ....................................... 2
Coverage B
  Personal Property ...................................... 2
  Personal Property Off Premises ................. 2
Property Not Covered .................................. 2
Extensions of Coverage
  Debris Removal ......................................... 3
  Improvements, Alterations and Additions... 3
  Reasonable Repairs .................................. 3
  Property Removed ...................................... 3
  Consequential Loss ................................... 3

Perils Insured Against ................................. 3

General Exclusions ..................................... 4

Deductible ................................................. 5

Conditions
  Policy Period............................................. 5
  Insurable Interest and Limit of Liability....... 5
  Concealment and Fraud............................. 5
  Residential Community Property............... 5
  Duties After Loss ...................................... 5
  **Your Duties After Loss** ........................ **5**
  Our Duties After Loss.............................. 6
  Loss Settlement........................................ 6

Salvage Rights ........................................... 6
Appraisal....................................................6
Other Insurance ..........................................7
Loss Payment ............................................7
Catastrophe Claims.....................................7
Suit Against Us............................................7
Subrogation ................................................7
Abandonment of Property............................7
No Benefit to Bailee.....................................7
**Vacancy – Suspension of Coverage.........7**
Liberalization...............................................7
Waiver or Change of Policy Provisions ........7
Mortgage Clause .........................................7
Cancellation ...............................................8
Refusal to Renew ........................................8
Assignment .................................................9
Death ........................................................9

---

### YOUR DUTIES AFTER A LOSS

1. Protect the property from further damage.
2. Give prompt written notice to the company.
3. Call the police if a law has been broken.
4. Make a list of all damaged personal property, including costs.
5. If requested, obtain proof of loss form from your agent or the company and submit within 91 days of the request.

---

Prescribed by the Texas Department of Insurance
Texas Dwelling Policy Form 1 – Effective January 1, 2002

DFForm 1-1

PIC 000000428

02/22/2015   00007160745

C-0772-17-E

# TEXAS DWELLING POLICY – FORM 1

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

## DEFINITIONS

In this policy:

A. "You" and "your" refer to the "named insured" shown in the declarations and the spouse if a resident of the same household.

B. We", "us" and "our" refer to the company providing this insurance.

C. "Business day" means a day other than a Saturday, Sunday or holiday recognized by the state of Texas.

## COVERAGES

This insurance applies to the described location and coverages for which a limit of liability is shown.

### COVERAGE A (DWELLING)

We cover:

1. the dwelling on the described location shown in the declarations, used principally for dwelling purposes, including structures attached to the dwelling.

2. materials and supplies located on or next to the described location used to construct, alter or repair the dwelling or other structures on the described location.

3. if not otherwise covered in this policy, building equipment and outdoor equipment used for the service of and located on the described location.

4. maintenance equipment, floor coverings, window shades, refrigerators and stoves that you own as a landlord, located on the described location.

5. other structures on the described location, set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line or similar connection.

   The total limit of liability for other structures is 10% of the Coverage A (Dwelling) limit of liability. This is additional insurance and does not reduce the Coverage A (Dwelling) limit of liability.

   We do not cover other structures used for commercial, manufacturing or farming purposes.

### COVERAGE B (PERSONAL PROPERTY)

We cover personal property and business personal property owned or used by you or members of your family residing with you while it is on the described location. At your request, we will cover personal property owned by a guest or residence employee while the property is on the described location.

You may use up to 10% of the Coverage B (Personal Property) limit of liability for loss by a **Peril Insured Against** to personal property covered under Coverage B (Personal Property) while anywhere in the world. This coverage does not apply to business personal property or property of guests or residence employees. This is not additional insurance and does not increase the Coverage B (Personal Property) limit of liability.

At your request, you may use up to 10% of the Coverage B (Personal Property) limit of liability for loss by a **Peril Insured Against** to property of others while in your custody and located on the described location. This is not additional insurance and does not increase the Coverage B (Personal Property) limit of liability.

**Property Not Covered**. We do not cover:

1. animals.

2. money, currency or bullion.

3. securities, deeds, or evidences of debt.

4. records, books of records or manuscripts.

5. motor or engine propelled vehicles or machines designed for movement on land, including attached machinery or equipment.

   However, we do cover such vehicles which are not subject to motor vehicle registration and are:

   a. devices and equipment for assisting the handicapped.

   b. power mowers.

   c. golf carts.

   d. vehicles or machines used for recreational purposes while located on the described location.

   e. farm equipment not designed for use principally on public roads.

C-0772-17-E

6. aircraft, meaning any device used or designed for flight.

We do cover model or hobby aircraft not used or designed to carry people or cargo.

7. watercraft, including outboard motors and furnishings or equipment.

We do cover watercraft, including outboard motors and furnishings or equipment, while located on land on the described location.

**EXTENSIONS OF COVERAGE:**

1. **Debris Removal.** We will pay your expense for the removal from the described location of:

   a. debris of covered property if a **Peril Insured Against** causes the loss.

   b. a tree that has damaged covered property if a **Peril Insured Against** causes the tree to fall.

This does not increase the limit of liability that applies to the damaged property.

2. **Improvements, Alterations and Additions.** If you are a tenant of the described location, the Coverage B (Personal Property) limit of liability applies to a loss caused by a **Peril Insured Against** to improvements, alterations and additions, made or acquired at your expense, to

that part of the described location used only by you.

This is not additional insurance and does not increase the Coverage B (Personal Property) limit of liability.

3. **Reasonable Repairs.** If a **Peril Insured Against** causes the loss, we will pay the reasonable cost you incur for necessary repairs made solely to protect covered property from further damage. This coverage does not increase the limit of liability that applies to the property being repaired.

4. **Property Removed.** We pay for expense and damage incurred in the removal of covered property from the described location endangered by a **Peril Insured Against**. This coverage exists on a pro-rata basis for 30 days at each location to which such property is removed for preservation. This is not additional insurance and does not increase the Coverage B (Personal Property) limit of liability.

5. **Consequential Loss.** We insure property covered by this policy against loss due to utility failure if such failure is a result of physical damage, caused by a **Peril Insured Against**, to power, heating or cooling equipment situated on the premises where the covered property is located.

---

**PERILS INSURED AGAINST**

---

We insure for direct physical loss to the covered property caused by a peril listed below unless the loss is excluded in the General Exclusions.

**1. Fire and Lightning.**

**When a premium for sudden and accidental damage from smoke, windstorm, hurricane and hail, explosion, aircraft and vehicles and riot and civil commotion is shown on the declarations, the following perils are made a part of the Perils Insured Against.**

2. **Sudden and Accidental Damage from Smoke.**

   This peril does not include loss caused by smog or by smoke from industrial or agricultural operations.

3. **Windstorm, Hurricane and Hail.**

   a. Unless specifically insured on the Miscellaneous Property Schedule endorsement, this peril does not include:

      (1) loss to cloth awnings, greenhouses and their contents, buildings or structures located wholly or partially over water and their contents.

      (2) loss to radio and television towers, outside satellite dishes, masts and

antennas, including lead-in wiring, wind chargers and windmills.

   b. We do not cover loss caused by windstorm, hurricane, or hail to the inside of a building or personal property contained in a building unless direct force of wind or hail makes an opening in a roof or wall and rain, snow, sand or dust enters through this opening and causes the damage.

4. **Explosion.**

5. **Aircraft and Vehicles.**

This peril does not include loss to outdoor equipment, fences, driveways, walks or retaining walls caused by a vehicle owned or operated by you or an occupant of the described location.

6. **Riot and Civil Commotion.**

**When a premium for vandalism and malicious mischief is shown in the declarations, the following peril is made a part of Perils Insured Against.**

7. **Vandalism and Malicious Mischief.**

This peril does not include:

a. loss to glass or safety glazing material constituting a part of the building other than glass building blocks.

3

DFFForm 1-3

C-0772-17-E

b. loss by pilferage, theft, burglary or larceny, but we will be liable for damage to the building

covered caused by burglars.

## GENERAL EXCLUSIONS

The following exclusions apply to loss to covered property:

1. We do not cover loss to electrical devices or wiring caused by electricity other than lightning.

2. **Flood**. We do not cover loss caused by or resulting from flood, surface water, waves, overflow of streams or other bodies of water or spray from any of these whether or not driven by wind.

3. **Governmental Action**. We do not cover loss caused by the destruction of property by order of governmental authority.

   But we do cover loss caused by the acts of destruction ordered by governmental authority taken at the time of a fire to prevent its spread, if the fire would be covered under this policy.

4. **War Damage**. We do not cover loss directly or indirectly from war. This includes undeclared war, civil war, insurrection, rebellion, revolution, warlike act by military personnel, destruction or seizure or use for military purpose, and including any consequence of these. Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

5. **Nuclear Damage**. We do not cover loss resulting directly or indirectly from nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused. We cover loss by fire resulting from nuclear reaction, radiation or radioactive contamination.

6. **Building Laws**. We do not cover loss caused by or resulting from the enforcement of any ordinance or law regulating the construction, repair or demolition of a building or structure.

   a. Coverage Provided.

   You may use up to $5,000 (at no additional premium) for the increased costs that you incur due to the enforcement of any ordinance or law, which requires or regulates:

   (1) the construction, demolition or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

   (2) the demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

   (3) the remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

   You may use all or part of this coverage to pay for the increased costs you incur to remove debris resulting from the construction, repair or replacement of property as stated in (a). above.

   This is additional insurance and does not reduce Coverage A (Dwelling) the limit of liability.

   b. Building Ordinance or Law Coverage Limitations.

   We will not pay for the increased cost of construction:

   (1) if the building or structure is not rebuilt or repaired;

   (2) if the rebuilt or repaired building or structure is not intended for similar occupancy as the current building or structure;

   (3) until the building or structure is actually repaired or rebuilt at the same premises; or

   (4) unless the rebuilding or repairs are made as soon as reasonably possible after the loss or damage, not to exceed 365 days after loss unless you have requested in writing that this time limit be extended for an additional 180 days.

   c. We do not cover:

   (1) the loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

   (2) the costs to comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, assess the effects of, pollutants on any covered building or other structure.

   Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.

   d. If the insured property is located in an area which is eligible for coverage through the

4

DFForm 1-4

C-0772-17-E

Texas Windstorm Insurance Association, the coverage described above, also applies to the increased cost you incur due to the repair, replacement or demolition required for the dwelling to comply with the building specifications contained in the Texas Windstorm Insurance Association's plan of operation.

All other Terms of the policy apply.

7. **MOLD, FUNGI OR OTHER MICROBES**. We do not cover loss caused by or resulting from mold, fungi or other microbes.

This exclusion does not apply to an ensuing loss caused by fire, smoke, or explosion.

However, we do cover ensuing mold, fungi or other microbial losses caused by or resulting from sudden and accidental discharge, leakage or overflow of water if the sudden and accidental discharge, leakage or overflow of water loss would otherwise be covered under this policy.

Sudden and accidental shall include a physical loss that is hidden or concealed for a period of time until it is detectable. A hidden loss must be reported to us no later than 30 days after the date you detect or should have detected the loss.

For purposes of this exclusion, ensuing mold, fungi, or other microbial losses covered under this policy include reasonable and necessary repair or replacement of property covered under Coverage A (Dwelling) and/or Coverage B (Personal Property).

We do not cover the cost for remediation, including testing of ensuing mold, fungi or other microbes. We do not cover any increase in expenses for Fair Rental Value (if applicable) and/or Debris Removal due to remediation and testing of ensuing mold, fungi or other microbes.

Remediation means to treat, contain, remove or dispose of mold, fungi or other microbes beyond that which is required to repair or replace the covered property physically damaged by water. Remediation includes any testing to detect, measure or evaluate mold, fungi or other microbes and any decontamination of the dwelling on the described location or property.

## DEDUCTIBLE

We will deduct from the amount of the loss or damage to each item of insurance in any one occurrence the deductible amount shown on the declarations page. The deductible amount applies to loss or damage caused by to any peril insured against other than fire or lightning.

## CONDITIONS

1. **Policy Period**. This policy applies only to loss which occurs during the policy period.

2. **Insurable Interest and Limit of Liability**. Even if more than one person has an insurable interest in the property covered, we will not be liable in any loss:

   a. for an amount greater than the interest of a person insured under this policy; or

   b. for more than the applicable limit of liability.

   Each time there is a loss to any building insured under Coverage A (Dwelling), the amount of insurance applicable to that building for loss by fire will be reduced by the amount of the loss. As repairs are made, the amount of insurance will be reinstated up to the limit of liability shown on the declarations page.

   Policy A Liquidated Demand. A fire insurance policy, in case of a total loss by fire of property insured, shall be held and considered to be a liquidated demand against the company for the full amount of the policy. This provision shall not apply to personal property.

3. **Concealment and Fraud**. This policy is void as to you, if you have intentionally concealed or misrepresented any material fact or circumstance, made false statements or committed fraud relating to this insurance, whether before or after a loss.

4. **Residential Community Property**. This policy, subject to all other terms and conditions, when covering residential community property, as defined by state law, shall remain in full force and effect as to the interest of each spouse covered, irrespective of divorce or change of ownership between the spouses unless excluded by endorsement attached to this policy, until the expiration of the policy or until cancelled in accordance with the terms and conditions of this policy.

5. **Duties After Loss**.

   a. **Your Duties After Loss**. In case of a loss to covered property caused by a Peril Insured Against, you must

      (1) give prompt written notice to us of the facts relating to the claim.

5

DFForm 1-5

C-0772-17-E

(2) notify the police in case of loss by theft.

(3) (a) protect the property from further damage.

(b) make reasonable and necessary repairs to protect the property.

(c) keep an accurate record of repair expenses.

(4) furnish a complete inventory of damaged personal property showing the quantity, description, amount of loss. Attach all bills, receipts and related documents which you have that justify the figures in the inventory.

(5) as often as we reasonably require:

(a) provide us access to the damaged property.

(b) provide us with pertinent records and documents we request and permit us to make copies.

(c) submit to examination under oath and sign and swear to it.

(6) send to us, if we request, your signed sworn proof of loss within 91 days of our request on a standard form supplied by us. We must request a signed sworn proof of loss not later than the 15th day after we receive your written notice, or we waive our right to require a proof of loss. Such waiver will not waive our other rights under this policy.

(a) This proof of loss shall state, to the best of your knowledge and belief:

1) the time and cause of loss;

2) the interest of the **insured** and all others in the property involved including all liens on the property;

3) other insurance which may cover the loss; and

4) the actual cash value of each item of property and the amount of loss to each item.

5) the name of the occupant and the occupancy of the property at the time of the loss.

b. **Our Duties After Loss**.

(1) Not later than the 15th day after we receive your written notice of claim, we must:

(a) acknowledge receipt of the claim.

If our acknowledgement of the claim is not in writing, we will keep a record of the date, method and content of our acknowledgement.

(b) begin any investigation of the claim.

(c) specify the information you must provide in accordance with item 6.a. above.

We may request additional information, if during the investigation of the claim such additional information is necessary.

(2) After we receive the information we request, we must notify you in writing of the status of your claim:

(a) within 15 business days; or

(b) within 30 days if we have reason to believe the loss resulted from arson.

(3) If we do not approve payment of your claim, we must:

(a) give the reason for denying your claim, or

(b) give the reasons we require additional time to process your claim. But, we must either approve or deny your claim within 45 days after our request for additional time.

6. **Loss Settlement**. Our limit of liability and payment for covered losses will not exceed the smallest of the following:

a. the actual cash value at the time of loss determined with proper deduction for depreciation;

b. the cost to repair or replace the damaged property with material of like kind and quality, with proper deduction for depreciation; or

c. the specified limit of liability of the policy.

7. **Salvage Rights**. If we notify you that we will pay your claim or part of your claim, the notice must also state whether we will or will not take all or any part of the damaged property. We must bear the expense of our salvage rights.

8. **Appraisal**.

If you and we fail to agree on the actual cash value, amount of loss, or cost of repair or replacement, either can make a written demand for appraisal. Each will then select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers will choose an umpire. If they cannot agree upon an

DFForm 1-6

C-0772-17-E

umpire within 15 days, you or we may request that the choice be made by a judge of a district court of a judicial district where the loss occurred. The two appraisers will then set the amount of loss, stating separately the actual cash value and loss to each item.

If the appraisers fail to agree, they will submit their differences to the umpire. An itemized decision agreed to by any two of these three and filed with us will set the amount of the loss. Such award shall be binding on you and us.

Each party will pay its own appraiser and bear the other expenses of the appraisal and umpire equally.

9. **Other Insurance**. If property covered by this policy is also covered by other insurance, we will pay only the proportion of a loss caused by any **Peril Insured Against** under this policy that the limit of liability applying under this policy bears to the total amount of insurance covering the property. If personal property is insured specifically under any other policy, then this policy applies as excess insurance over the specific insurance.

10. **Loss Payment**.

   a. If we notify you that we will pay your claim, or part of your claim, we must make payment not later than the 5th business day after we notify you.

   b. If payment of your claim or part of your claim requires the performance of an act by you, we must make payment not later than the 5th business day after the date you perform the act.

11. **Catastrophe Claims**. If a claim results from a weather related catastrophe or a major natural disaster, each claim handling deadline shown under the Duties After Loss and Loss Payment provisions is extended for an additional 15 days.

   Catastrophe or major natural disaster means a weather related event which:

   a. is declared a disaster under the Texas Disaster Act of 1975; or

   b. is determined to be a catastrophe by the State Board of Insurance.

12. **Suit Against Us**. No suit or action can be brought unless the policy provisions have been complied with. Action brought against us must be started within two years and one day after the cause of action accrues.

13. **Subrogation**. You may waive in writing before a loss, all rights of recovery against any person. If not waived,

we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

14. **Abandonment of Property**. There can be no abandonment of property to us.

15. **No Benefit to Bailee**. We will not recognize any assignment or grant any coverage for the benefit of a person or organization holding, storing or moving property for a fee.

16. **Vacancy**. During the policy term, if an insured building is vacant for 60 consecutive days immediately before a loss, we will not be liable for a loss by the perils of fire and lightning or vandalism or malicious mischief. Coverage may be provided by endorsement to this policy.

17. **Liberalization**. If the State Board of Insurance adopts a revision which would broaden or extend the coverage under this policy without additional premium within 45 days prior to or during the policy period, the broadened or extended coverage will immediately apply to this policy.

18. **Waiver or Change of Policy Provisions**. Changes in this policy may be made and perils insured against added only by attaching a written endorsement properly executed by our authorized agent. No provision of this policy may be waived unless the terms of this policy allow the provision to be waived. Our request for an appraisal or examination will not waive any of our rights.

19. **Mortgage Clause (without contribution)**.

   a. The word "mortgagee" includes trustee.

   b. We will pay for any covered loss of or damage to buildings or structures to the mortgagee shown on the declarations page as interests appear.

   c. The mortgagee has the right to receive loss payment even if the mortgagee has started foreclosure or similar action on the building or structure.

   d. If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the mortgagee has the right to receive loss payment if the mortgagee:

      (1) at our request, pays any premiums due under this policy, if you have failed to do so.

      (2) submits a signed, sworn statement of loss within 91 days after receiving notice from us of your failure to do so.

      (3) has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgagee.

7

DFForm 1-7

C-0772-17-E

All of the terms of this policy will then apply directly to the mortgagee. Failure of the mortgagee to comply with d.(1), d.(2) or d.(3) above shall void this policy as to the interest of the mortgagee.

e. If we pay the mortgagee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

(1) The mortgagee's rights under the mortgage will be transferred to us to the extent of the amount we pay.

(2) the mortgagee's right to recover the full amount of the mortgagee's claim will not be impaired.

At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

f. If this policy is cancelled, we will give the mortgagee specifically named on the declarations page written notice of cancellation.

If we cancel the policy, we will give the mortgagee the same number of days notice of cancellation we give you.

If you cancel the policy, we will give the mortgagee notice of cancellation to be effective on the date stated in the notice. The effective date of cancellation cannot be before the 10th day after we mail notice.

We will not give notice of cancellation to any successor or assignee of the mortgagee named in this policy.

g. If the property described under Coverage A (Dwelling) is foreclosed upon under the deed of trust, the mortgagee may cancel this policy of insurance and will be entitled to any unearned premiums from this policy.

The mortgagee must credit any unearned premium against any deficiency owed by the borrower and return any unearned premium not so credited to the borrower.

h. If we elect not to renew this policy, the mortgagee specifically named on the declarations page will be given written notice of the non-renewal not later than the 30th day before the date on which this policy expires.

20. **Cancellation**.

a. You may cancel this policy at any time by notifying us of the date cancellation is to

take effect. We will send you any refund due when the policy is returned to us.

b. We may cancel this policy only for the reasons stated in this condition by giving you notice in writing of the date cancellation takes effect.

(1) If this policy has been in effect for less than 90 days and is not a renewal policy, we may cancel this policy for any reason.

The effective date of cancellation cannot be before:

(a) the 10th day after we mail notice if we cancel for non-payment of premium.

(b) the 30th day after we mail notice if we cancel for any other reason.

(2) If this policy has been in effect 90 days or more, we may not cancel this unless:

(a) you do not pay the premium or any portion of the premium when due.

(b) the State Board of Insurance determines that continuation of the policy would violate the Texas Insurance Code or any other laws governing the business of insurance in this state.

(c) you submit a fraudulent claim.

(d) there is an increase in hazard covered by this policy that is within your control and that would produce an increase in the premium/rate of this policy.

The effective date of cancellation cannot be before the 10th day after we mail the notice. Our notice of cancellation will state the reason for cancellation.

c. If we cancel, our notice to you will state that if the refund is not included with the notice, it will be returned on demand.

d. We may not cancel this policy solely because you are an elected official.

21. **Refusal to Renew**.

a. We may not refuse to renew this policy because of claims for losses resulting from natural causes.

b. We may not refuse to renew this policy solely because you are an elected official.

c. We may refuse to renew this policy if you have filed three or more claims under the policy in any three year period that do not result from natural causes.

8

DFForm 1-8

C-0772-17-E

If you have filed two claims in a period of less than three years, we may notify you in writing, that if you file a third claim during the three year period, we may refuse to renew this policy by providing you proper notice of our refusal to renew as provided in d. below. If we do not notify you after the second claim, we may not refuse to renew this policy because of losses.

A claim does not include a claim that is filed but is not paid or payable under the policy.

d. If we refuse to renew this policy, we must deliver to you, or mail to you at your mailing address shown on the declarations page and any mortgagee named in the declarations page, written notice of refusal

to renew not later than the 30th day before the date in which this policy expires. Proof of mailing will be sufficient proof of notice. If we fail to give you proper notice of our decision to refuse renewal, you may require us to renew the policy.

22. **Assignment**. Assignment of this policy will not be valid unless we give our written consent.

23. **Death**. If the named insured dies, we insure:

a. the named insured's spouse, if a resident of the same household at the time of death.

b. the legal representative of the deceased only with respect to the described premises of the named insured.

DFForm 1-9

PIC 000000428

02/22/2015    00007160745

C-0772-17-E

# NAMED WINDSTORM DEDUCTIBLE ENDORSEMENT

*This endorsement changes your policy. Please read it carefully and keep it with your policy.*

The following item is added to **DEFINITIONS**:

"Named windstorm" means a tropical cyclone declared by the National Weather Service (NWS) to be a "hurricane" or "tropical storm". If the NWS goes away or stops performing those functions, such a determination will be from a similar service chosen by us. The duration of the named windstorm includes the following:

a.  the time period when a named windstorm watch or named windstorm warning issued by the NWS is active for any part of this state or a bordering state or country;
b.  the time period during which the named windstorm conditions exist anywhere in this state; and
c.  the 24 hours following the termination of the last named windstorm watch or named windstorm warning issued by the NWS for any part of this state or a bordering state or country, or if a watch or warning is not issued, then 24 hours following the termination of the named windstorm's classification as a "hurricane" or "tropical storm," whichever occurs last.

The following item is added to **DEDUCTIBLE**:

The "Named Windstorm Deductible" shall apply when the date of the direct physical loss to the covered property is caused by or results from a named windstorm. This deductible applies regardless of any other cause or event contributing concurrently or in any sequence to the loss. No other deductible applies to direct physical loss caused by or resulting from a named windstorm.

*All other provisions of your policy apply.*

© 2014 Wellington Risk Insurance Agency, Inc.
SDF-D26 (10/14)

PIC 000000428

C-0772-17-E

## PROPERTY AMENDATORY ENDORSEMENT

*This endorsement changes your policy. Please read it carefully and keep it with your policy.*

Number 7. under **COVERAGE B (PERSONAL PROPERTY), Property Not Covered**, is replaced with the following:

7. We do not cover watercraft, including outboard motors, furnishings, and equipment. We will pay up to $1,000 for loss or damage by a covered peril when watercraft is located on land at the described premises. This coverage is not additional insurance. It does not increase the amount of insurance available under COVERAGE B (PERSONAL PROPERTY).

*All other provisions of your policy apply.*

© 2014 Wellington Risk Insurance Agency, Inc.
SDF-D7 (12/14)

C-0772-17-E

## SPECIAL PROVISIONS ENDORSEMENT

*This endorsement changes your policy. Please read it carefully and keep it with your policy.*

The following item is added to **DEFINITIONS**:

"Dwelling" means the building and its attached structures at the location described on the Policy Declarations when used as a residence.

"Solar panel systems" means all components necessary to capture and convert solar radiation to power, including, without limitation: elevated panes or plates, or a canopy or array thereof; the bases or foundation of the panels, plates, canopy, or array; charge controllers; power inverters; storage batteries; generators; wires and cables; and meters and monitors.

"Vacancy" or "vacant" means when the single family dwelling identified as the insured property in the Policy Declarations is: (1) void of a substantial part of the personal property customary to the use of the dwelling as a residence; or (2) not lived in as a customary and usual place of habitation, which exists even if the dwelling contains furnishings, and no one is residing in it.

The following item is added to **COVERAGE A (DWELLING)**:

**Property Not Covered.** We do not cover:
1. solar panel systems, whether or not attached to the dwelling on the described location shown in the Policy Declarations, including structures attached to the dwelling, or other structures on the described location, set apart from the dwelling by clear space.

The following item is added under **COVERAGE B (PERSONAL PROPERTY)**, **Property Not Covered**:

8. solar panel systems.

Number 1. under **GENERAL EXCLUSIONS** is amended to include the following:

This exclusion does not apply to direct physical loss that is sudden and unexpected as to all insured persons caused by fire or explosion.

Number 2. under **GENERAL EXCLUSIONS** is replaced with the following:

2. We do not cover loss to the property described in Coverage A (Dwelling) or Coverage B (Personal Property) consisting of or caused by the following, and such loss or damage is excluded regardless of the cause of the excluded event and whether the event occurs suddenly or gradually, arises from natural or external forces, or occurs as a result of any combination of these:
   a. flood, including, but not limited to, surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind.
   b. water or any other substance that:
      (1) backs up through sewers or drains; or
      (2) leaks or overflows from a sewer, drain, sump pump, sump pump well, or other system designed for the removal of subsurface water which is drained from a foundation area of a structure.
   c. water or any other substance on or below the surface of the ground, regardless of its source. This includes water or any other substance which exerts pressure on, or flows, seeps or leaks through any part of the described location, building, sidewalk, driveway, foundation, swimming pool, spa or other structure.
   d. earth movement of any type, including, but not limited to, earthquake, volcanic eruption, lava flow, landslide, subsidence, mudflow, pressure, sinkhole, erosion, or the sinking, rising, shifting, creeping, expanding, bulging, cracking, settling or contracting of the earth. This exclusion applies whether or not the earth movement is combined with water.

C-0772-17-E

## SPECIAL PROVISIONS ENDORSEMENT

We do cover direct physical loss that is sudden and unexpected as to all insured persons caused by fire, explosion or theft resulting from items a. through d. above.

Number 6. under **GENERAL EXCLUSIONS** is amended to include the following after the first sentence in the first paragraph:

Except, however, we do provide coverage to the extent described under **PERILS INSURED AGAINST** and only to the extent described below in subparts a. through d.

The following items are added under **GENERAL EXCLUSIONS** to apply to COVERAGE A (DWELLING) and COVERAGE B (PERSONAL PROPERTY):

8. **Settling, Cracking, Bulging, Shrinkage, or Expansion**. We do not cover loss consisting of, caused by, or resulting from settling, cracking, bulging, shrinkage, or expansion of foundations, slabs, walls, floors, ceilings, roof structures, walks, drives, curbs, fences, retaining walls, bulkheads, spas, or swimming pools, regardless of the cause of the excluded event and whether the event occurs suddenly or gradually, arises from natural or external forces, or occurs as a result of any combination of these.

9. **Outdoor Equipment, Fences, Driveways, Walks, Lawns, Trees, Shrubs, Plants, Retaining Walls or Bulkheads**.
   a. We do not cover loss to outdoor equipment, driveways, walks, lawns, trees, shrubs, plants, or retaining walls or bulkheads not a part of the building, regardless of the excluded event. This subpart only applies to peril numbers 2 and 3.
   b. We do not cover loss to fences, regardless of the excluded event. This subpart only applies to peril number 2.

10. **Wear and Tear, Inherent Vice, Rust, Deterioration, Decay, Rats, Mice, Vermin, Termites, Moths or Other Insects, Contamination, Neglect, Improper Maintenance, Failure to Make Proper Repairs, Failure to Make Timely Repairs**. We do not cover loss caused by:
   a. wear and tear, inherent vice, rust, deterioration, decay or loss caused by any quality in property that causes it to damage or destroy itself. This subpart does not apply to Peril 8;
   b. rats, mice, vermin, termites, moths or other insects;
   c. contamination; or
   d. neglect, improper maintenance, the failure to make proper repairs or the failure to make timely repairs.

11. **Planning, Zoning, Construction or Maintenance**. We do not cover loss consisting of, caused by, contributed to or aggravated by, or resulting from inadequate or defective planning, zoning, development, surveying, siting, design, specifications, workmanship, construction, grading, compaction, maintenance, repairs, or materials, whether used in construction, remodeling, maintenance or repair of part or all of any property (including land, structures or any improvements) whether on or off the described location, regardless of the excluded event.

12. **Intentional Conduct**. We do not cover loss intentionally caused by an insured person, tenant or resident of the tenant's household. This exclusion will not apply to an innocent spouse or an insured person who did not contribute to such loss or to the interest of an innocent spouse or insured person in the damaged property.

Number 12. under **CONDITIONS** is replaced with the following:

12. **Suit Against Us**. No suit or action can be brought unless the policy provisions have been complied with. Action brought against us must be started within two years and one day after the cause of action accrues. If you seek damages in an action against us under Chapter 541 of the Texas Insurance Code, you must provide written notice to us not later than the 61st day before the date the action is filed. The notice is not required if giving notice is impracticable because the action is asserted as a counterclaim. We agree to toll your time to a file a suit once notice is

C-0772-17-E

## SPECIAL PROVISIONS ENDORSEMENT

provided until 5 days after the expiration of this notice period.

Number 20. under **CONDITIONS** is replaced with the following:

20. **Cancellation**.
  a. You may cancel this policy at any time by notifying us of the date cancellation is to take effect. Any refund due shall be returned to you not later than the 15th business day after the effective date of cancellation.
  b. If this policy has been in effect for less than 60 days, we may cancel the policy if:
    (1) we identify a condition that:
      (a) creates an increased risk of hazard;
      (b) was not disclosed in the application for insurance coverage; and
      (c) is not the subject of a prior claim; or
    (2) before the effective date of the policy, we have not accepted a copy of a required inspection report that:
      (a) was completed by an inspector licensed by the Texas Real Estate Commission or who is otherwise authorized to perform inspections; and
      (b) is dated not earlier than the 90th day before the effective date of the policy.
      An inspection report is considered accepted if we do not reject it before the 11th day after the date the inspection report is received by us.
  c. We may cancel this policy at any time for any of the following reasons:
    (1) you do not pay the premium or any portion of the premium when due.
    (2) the Department of Insurance determines that continuation of the policy would violate the Texas Insurance Code or any other laws governing the business of insurance in this state.
    (3) you submit a fraudulent claim.
    (4) there is an increase in the hazard covered by this policy that is within your control and that would produce an increase in the premium rate of this policy.
  d. The effective date of a cancellation cannot take effect until the 10th day after we mail the notice of cancellation to you.
  e. If we cancel, any refund due shall be returned to you not later than the 15th business day after the effective date of cancellation.
  f. We may not cancel this policy solely because you are an elected official.

The following provisions are added to **CONDITIONS** and shall apply to all coverages under the policy:

**What Law Will Apply**. This policy is issued in accordance with the laws of Texas and covers property or risks principally located in Texas. The laws of Texas shall govern all claims or disputes in any way related to this policy.

**Where Suits May Be Brought**. Any and all suits related to this policy will be brought, heard and decided only in a state or federal court located in the state in which the dwelling at the described location shown in the Policy Declarations is located. Any and all suits against persons not a party to this policy but involved in the sale, administration, performance or alleged breach of this policy, shall be brought, heard and decided only in a state or federal court located in the state in which the dwelling is located, provided that such persons are subject to or consent to suit in the courts specified in this paragraph.
Nothing in this section shall limit or impair any party's right to remove a state court suit to a federal court.

**Renewal**. If we offer to renew this policy, you may accept the offer only by payment of the premium due to us on or before the effective date of the renewal policy.

*All other provisions of your policy apply.*

C-0772-17-E

## LOSS SETTLEMENT ENDORSEMENT

*This endorsement changes your policy. Please read it carefully and keep it with your policy.*

Number 5. **Your Duties After Loss** is amended to include the following in number 5.a.(6)(a):

6) If you elect to make a claim for replacement cost under this policy, this proof of loss shall also state to the best of your knowledge and belief:
   i.   The replacement cost of the described dwelling.
   ii.  The replacement cost of any other building on which loss is claimed.
   iii. The full cost of repair or replacement (by a licensed contractor) of loss without deduction for depreciation.

Number 6. under **CONDITIONS** is replaced with the following:

6. **Loss Settlement**.
   a. For covered losses under COVERAGE A (DWELLING), except wall-to-wall carpeting, cloth awnings, and fences, we will pay the replacement cost value (RCV) of the damaged property, subject to the following:
      (1) If, at the time of loss the Coverage A limit of liability is 80% or more of the full RCV of the dwelling, we will pay the repair, rebuild, or replacement cost of the damaged building structure(s) without deduction for depreciation.
      (2) If, at the time of loss, the Coverage A limit of liability is less than 80% of the full RCV of the dwelling, we will pay only a proportionate share of the full RCV of the damaged building structure(s). Our share is equal to:

$$\text{RCV of the Loss} \quad x \quad \frac{\text{Coverage A (Dwelling) Limit of Liability}}{\text{80\% of RCV of the Dwelling}}$$

      (3) If, at the time of loss, the actual cash value of the damaged building structure(s) is greater than the RCV determined under (1) or (2) above, we will pay the actual cash value up to the applicable limit of liability.

      When we determine the amount of insurance to equal 80% of the full RCV of the dwelling, we do not include the value of excavations, underground pipes and wiring, and foundations that are below the surface of the ground.

      We will pay only the actual cash value of the damaged building structure(s) until repair, rebuild, or replacement is complete. Repair, rebuild, or replacement must be completed within 365 days after loss, unless you request in writing that this time limit be extended for an additional 180 days. Upon completion of the repairs, rebuilding, or replacement, we will pay the additional amount claimed under RCV, but our payment will be the smallest of the following:
      (1) the amount actually and necessarily spent to repair, rebuild, or replace the damaged building structure(s).
      (2) the cost to repair, rebuild, or replace that part of the building structure(s) damaged with material of like kind and quality and for the same use and occupancy on the same premises.
      (3) the limit of liability applicable to the damaged or destroyed building structure(s).
      Proof of the repairs, rebuilt, or replacement must be submitted.
   b. For covered losses under COVERAGE B (PERSONAL PROPERTY) and to wall-to-wall carpeting, cloth awnings, and fences, we will pay the smallest of the following:
      (1) the actual cash value at the time of loss determined with proper deduction for depreciation.
      (2) the cost to repair, rebuild, or replace the damaged property with material of like kind and quality, with proper deduction for depreciation.
      (3) the specified limit of liability.

*All other provisions of your policy apply.*

© 2014 Wellington Risk Insurance Agency, Inc.
SDF-D3 (12/14)

PIC 000000428

C-0772-17-E

In the event of a claim under this policy, please notify:

| | | |
|---|---|---|
| Wellington Claim Service, Inc. | Telephone: | (800) 447-6465 |
| PO Box 1116 (76101-1116) | | (817) 738-1878 |
| 6801 Calmont Ave | | |
| Ft. Worth, TX 76116 | Facsimile: | (800) 880-4049 |
| | | (817) 732-2131 |

**IN WITNESS WHEREOF, Palomar Specialty Insurance Company has caused this policy to be signed by its President and Secretary and countersigned on the declarations page by a duly Authorized Agent of the Company.**

**Heath A. Fisher**
**Secretary and Executive Vice President**

**David M. Armstrong**
**President**

PSD30B

02/22/2015   00007160745

C-0772-17-E
275TH DISTRICT COURT, HIDALGO COUNTY, TEXAS

CITATION

STATE OF TEXAS

**NOTICE TO DEFENDANT:** You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty (20) days after you were served with this citation and petition, a default judgment may be taken against you.

**Palomar Specialty Insurance Company**
**CT Corporation System**
**1999 Bryan Street Suite 900**
**Dallas TX 75201-3140**

You are hereby commanded to appear by filing a written answer to the **PLAINTIFF'S ORIGINAL PETITION AND REQUESTS FOR DISCLOSURE** on or before 10:00 o'clock a.m. on the Monday next after the expiration of twenty (20) days after the date of service hereof, before the **Honorable Juan Partida, 275th District Court** of Hidalgo County, Texas at the Courthouse at 100 North Closner, Edinburg, Texas 78539.

Said petition was filed on this the 17th day of February, 2017 and a copy of same accompanies this citation. The file number and style of said suit being C-0772-17-E, **NIDIA REYNA VS. PALOMAR SPECIALTY INSURANCE COMPANY AND JOHN CZUHAJEWSKI**

Said Petition was filed in said court by BRENT LEE KLENDER, 5707 INTERSTATE TEN WEST   SAN ANTONIO TX 78201.

The nature of the demand is fully shown by a true and correct copy of the petition accompanying this citation and made a part hereof.

The officer executing this writ shall promptly serve the same according to requirements of law, and the mandates thereof, and make due return as the law directs.

**ISSUED AND GIVEN UNDER MY HAND AND SEAL** of said Court at Edinburg, Texas on this the 22nd day of February, 2017.

**LAURA HINOJOSA, DISTRICT CLERK**
**100 N. CLOSNER, EDINBURG, TEXAS**
**HIDALGO COUNTY, TEXAS**

_____
**MARCOS LOPEZ, DEPUTY CLERK**

Electronically Filed
3/16/2017 7:21:26 PM
Hidalgo County District Clerks
Reviewed By: Krystal Hidalgo

C-0772-17-E
**OFFICER'S RETURN**

Came to hand on _____ of _____, 201____ at _____ o'clock ____.m. and executed in _____ County, Texas by delivering to each of the within named Defendant in person, a true copy of this citation, upon which I endorsed the date of delivery to said Defendant together with the accompanying copy of the _____ (petition) at the following times and places, to-wit:

| NAME | DATE | TIME | PLACE |
|------|------|------|-------|
|      |      |      |       |

And not executed as to the defendant, _____ the diligence used in finding said defendant, being: _____ and the cause of failure to execute this process is: _____ and the information received as to the whereabouts of said defendant, being: _____. I actually and necessarily traveled _____ miles in the service of this citation, in addition to any other mileage I may have traveled in the service of other process in the same case during the same trip.

Fees:   serving ... copy(s) $_____
           miles ...................$_____

_____
**DEPUTY**

**COMPLETE IF YOU ARE PERSON OTHER THAN A SHERIFF, CONSTABLE OR CLERK OF THE COURT**

In accordance to Rule 107, the officer or authorized person who serves or attempts to serve a citation must sign the return. If the return is signed by a person other than a sheriff, constable or the clerk of the court, the return must either be verified or be signed under the penalty of perjury. A return signed under penalty of perjury must contain the statement below in substantially the following form:

"My name is _____, my date of birth is _____ and the address is _____,and I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED in _____County, State of Texas, on the _____ day of _____, 201___.

_____
**Declarant"**

_____
**If Certified by the Supreme Court of Texas**
**Date of Expiration / SCH Number**

Electronically Filed
3/16/2017 7:21:26 PM
Hidalgo County District Clerks
Reviewed By: Krystal Hidalgo

CAUSE NO. C-0772-17-E

| | | |
|---|---|---|
| NIDIA REYNA | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | 275TH DISTRICT COURT |
| | § | |
| PALOMAR SPECIALTY INSURANCE COMPANY AND | § | |
| JOHN CZUHAJEWSKI | | |
| Defendant. | § | HIDALGO COUNTY, TEXAS |

## AFFIDAVIT OF SERVICE - CERTIFIED MAIL

On this day personally appeared **Teresa Ramos** who, being by me duly sworn, deposed and said:

"The following came to hand on **February 22, 2017, 12:00 pm**,

CITATION & PLAINTIFF'S OORIGINAL PETITION AND REQUESTS FOR DISCLOSURE ,

and was executed on **March 3 2017** by mailing to PALOMAR SPECIALTY INSURANCE COMPANY BY DELIVERING TO CT CORPORATION SYSTEM at 1999 BRYAN STREET 90, DALLAS, TEXAS 75201, by regular mail and by Certified Mail, Return Receipt Requested, Receipt No. **7015 3430 0001 0199 3705**, a true copy of this citation.

The regular mail envelope **WAS NOT** returned. PS Form 3811 was returned on **March 6, 2017** having been **SIGNED ON February 27, 2017** and is attached hereto.

I am a person over eighteen (18) years of age and I am competent to make this affidavit. I am a resident of the State of Texas. I am familiar with the Texas Rules of Civil Procedure as they apply to service of Process. I am not a party to this suit nor related or affiliated with any herein, and have no interest in the outcome of the suit. I have never been convicted of a felony or of a misdemeanor involving moral turpitude. I have personal knowledge of the facts stated herein and they are true and correct."

Teresa Ramos
SCH# 10049 Expires 11-30-18
Bexar County, Texas

BEFORE ME, a Notary Public, on this day personally appeared **Teresa Ramos**, known to me to be the person whose name is subscribed to the foregoing document and, being by me first duly sworn, declared that the statements therein contained are within his or her personal knowledge and are true and correct.

SUBSCRIBED AND SWORN TO ME ON 3/9/17

Notary Public, State of Texas

Date 3/27/17
A true copy I certify
LAURA HINOJOSA
District Clerk, Hidalgo County, Texas
By_____ Deputy#3

RICHARD D. RAMOS
NOTARY PUBLIC
STATE OF TEXAS
My Comm. Exp. 03-22-2018
ID# 5334195



...ly Filed
...6 PM
Hidalgo County District Clerks
Reviewed By: Krystal Hidalgo

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Palomar specialty Insurance Company by
delivering to its registered agent, CT corporation
System
1999 Bryan street suite 900
Dallas, Texas 75201

9590 9403 0951 5223 1485 62

2. Article Number (Transfer from service label)

7015 3430 0001 0199 3705

PS Form 3811, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____

☐ Agent
☐ Addressee

B. Received by (Printed Name)

Chris Wells

C. Date of Delivery

FEB 27 2017

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

DALLAS, TX 75201

Certified Mail Fee $3.35

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy) $ $0.00
☐ Return Receipt (electronic) $ $0.00
☐ Certified Mail Restricted Delivery $ $0.00
☐ Adult Signature Required $ $0.00
☐ Adult Signature Restricted Delivery $

Postage $2.45

Total Postage and Fees $5.55

Sent To
Palomar specialty Insurance Comp.
Street and Apt. No., or PO Box No.
1999 Bryan street suit 900
City, State, ZIP+4®
Dallas, Texas 75201

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

7015 3430 0001 0199 3705

C-0772-17-E
## 275TH DISTRICT COURT, HIDALGO COUNTY, TEXAS

### CITATION

### STATE OF TEXAS

**NOTICE TO DEFENDANT:**  You have been sued.  You may employ an attorney.  If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty (20) days after you were served with this citation and petition, a default judgment may be taken against you.

**John Czuhajewski**
**705 Allen Street**
**Copperas Cove TX  76522-3151**

You are hereby commanded to appear by filing a written answer to the **PLAINTIFF'S ORIGINAL PETITION AND REQUESTS FOR DISCLOSURE** on or before 10:00 o'clock a.m. on the Monday next after the expiration of twenty (20) days after the date of service hereof, before the **Honorable Juan Partida, 275th District Court** of Hidalgo County, Texas at the Courthouse at 100 North Closner, Edinburg, Texas 78539.

Said petition was filed on this the 17th day of February, 2017 and a copy of same accompanies this citation.  The file number and style of said suit being C-0772-17-E, **NIDIA REYNA  VS.  PALOMAR SPECIALTY INSURANCE COMPANY AND JOHN CZUHAJEWSKI**

Said Petition was filed in said court by BRENT LEE KLENDER, 5707 INTERSTATE TEN WEST   SAN ANTONIO TX  78201.

The nature of the demand is fully shown by a true and correct copy of the petition accompanying this citation and made a part hereof.

The officer executing this writ shall promptly serve the same according to requirements of law, and the mandates thereof, and make due return as the law directs.

**ISSUED AND GIVEN UNDER MY HAND AND SEAL** of said Court at Edinburg, Texas on this the 22nd day of February, 2017.

**LAURA HINOJOSA, DISTRICT CLERK**
**100 N. CLOSNER, EDINBURG, TEXAS**
**HIDALGO COUNTY, TEXAS**

**MARCOS LOPEZ, DEPUTY CLERK**

Electronically Filed
3/20/2017 8:37:05 AM
Hidalgo County District Clerks
Reviewed By: Krystal Hidalgo

CAUSE NO. C-0772-17-E

| | | |
|---|---|---|
| NIDIA REYNA | § | IN THE DISTRICT COURT |
| | § | |
| V. | § | 275TH JUDICIAL DISTRICT |
| | § | |
| PALOMAR SPECIALTY INSURANCE | § | |
| COMPANY AND JOHN CZUHAJEWSKI | § | HIDALGO COUNTY, TEXAS |

## DEFENDANT PALOMAR SPECIALTY INSURANCE COMPANY'S ORIGINAL ANSWER

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, PALOMAR SPECIALTY INSURANCE COMPANY, Defendant in the above-styled and numbered cause, and makes and files this, its original answer in reply to Plaintiff's Petition, and for such answer would respectfully show unto the Court the following:

1.

Pursuant to Rule 92 of the Texas Rules of Civil Procedure, Defendant generally denies the allegations contained within Plaintiff's Petition and demand strict proof thereon by a preponderance of the credible evidence in accordance with the laws of the State of Texas.

2.

Pleading further and without waiver of the above, Defendant denies the occurrence of all conditions precedent to Plaintiff's claim. Without limiting the foregoing, Defendant denies that there has been full compliance with all terms and conditions of the insurance policy at issue as required prior to Plaintiff bringing suit, including, but not limited to, the requirement that payment is only due after agreement is reached on the amount of loss or an appraisal award has been made.

3.

Pleading further and without waiver of the above, Defendant requests that this Court compel mediation pursuant to TEXAS INSURANCE CODE § 541.161(a). This mediation is required

Date_____3/27/17_____

A true copy I certify
LAURA HINOJOSA
District Clerk, Hidalgo County, Texas
By_____Deputy#3

Electronically Filed
3/20/2017 8:37:05 AM
Hidalgo County District Clerks
Reviewed By: Krystal Hidalgo

under the Texas Insurance Code and Texas Business & Commerce Code.   TEX. INS. CODE § 541.161(b).

4.

Additionally, the insurance policy pertaining to the claims asserted by the Plaintiff includes a specific "Appraisal" clause which sets forth the procedure in the event of a disagreement of the amount of the loss. Specifically, the policy requires that, upon written request, the property must be appraised by each party's own independent appraiser. In the event of a disagreement in the appraisal, the differences are submitted to an umpire for determination. Defendant insurance company was potentially deprived of the opportunity to invoke the appraisal clause prior to suit. Further, the lawsuit potentially prevented Defendant insurance company from attempting to resolve the alleged problems, reaching an impasse or invoking the appraisal clause, if necessary. Defendant insurance company reserves the contractual right to invoke this clause and that the property be appraised according to the terms of the applicable insurance policy if the parties reach an impasse. Defendant insurance company has not waived and is not waiving this provision and may assert it in the future.

5.

Pursuant to Rule 193.7 of the Texas Rules of Civil Procedure, Defendant hereby gives actual notice to Plaintiff that any and all documents and materials produced in response to written discovery may be used as evidence in this case; and, that any such materials may be used as evidence against the party producing the document at any pretrial proceeding and/or at the trial of this matter without the necessity of authenticating the document and/or materials produced in discovery.

Electronically Filed
3/20/2017 8:37:05 AM
Hidalgo County District Clerks
Reviewed By: Krystal Hidalgo

6.

### Requests for Disclosure

At the time required by law or the Rules, this Defendant requests the Plaintiff to respond to all of the matters in TRCP 194.2.

WHEREFORE, PREMISES CONSIDERED, Defendant prays that upon final hearing hereof, that Plaintiff not recover against Defendant and that Defendant goes hence with its costs without day and for such other and further relief, at law or in equity, to which Defendant may justly show itself entitled to receive.

Respectfully submitted,

Gault, Nye & Quintana, L.L.P.
P.O. Box 6666
Corpus Christi, Texas 78466
(361) 654-7008
(361) 654-7001 Telecopier
tnye@gnqlawyers.com

By: _____

Thomas F. Nye
State Bar No. 15154025

William Gault
State Bar No. 07765050
Gault, Nye & Quintana, L.L.P.
P.O. Box 5959
Brownsville, Texas 78523
(956) 544-7110
(956) 544-0607 Telecopier
bgault@gnqlawyers.com

ATTORNEYS FOR DEFENDANT PALOMAR SPECIALTY INSURANCE COMPANY

Electronically Filed
3/20/2017 8:37:05 AM
Hidalgo County District Clerks
Reviewed By: Krystal Hidalgo

## CERTIFICATE OF SERVICE

I, Thomas F. Nye, hereby certify that on the 20th day of March, 2017, a true and correct copy of the above and foregoing document was served upon the following counsel as indicated:

*Attorneys for Plaintiff*
Brent L. Klender
Harold McCall
Don Crook
Wayne Wright, LLP
Email: bklender@waynewright.com
hmccall@waynewright.com
dcrook@waynewright.com

**VIA E-FILING**

Thomas F. Nye
Thomas F. Nye

Electronically Filed
3/20/2017 8:37:05 AM
Hidalgo County District Clerks
Reviewed By: Krystal Hidalgo

CAUSE NO. C-0772-17-E

| | | |
|---|---|---|
| NIDIA REYNA | § | IN THE DISTRICT COURT |
| | § | |
| V. | § | 275TH JUDICIAL DISTRICT |
| | § | |
| PALOMAR SPECIALTY INSURANCE | § | |
| COMPANY AND JOHN CZUHAJEWSKI | § | HIDALGO COUNTY, TEXAS |

## DEFENDANT'S DEMAND FOR JURY

COMES NOW, PALOMAR SPECIALTY INSURANCE COMPANY, Defendant in the

above-referenced cause, and demands a trial by jury. The jury fee has been paid by the Plaintiff.

Respectfully submitted,

Gault, Nye & Quintana, L.L.P.
P.O. Box 6666
Corpus Christi, Texas 78466
(361) 654-7008
(361) 654-7001 Telecopier
tnye@gnqlawyers.com

By: _____
Thomas F. Nye
State Bar No. 15154025

William Gault
State Bar No. 07765050
Gault, Nye & Quintana, L.L.P.
P.O. Box 5959
Brownsville, Texas 78523
(956) 544-7110
(956) 544-0607 Telecopier
bgault@gnqlawyers.com

ATTORNEYS FOR DEFENDANT PALOMAR
SPECIALTY INSURANCE COMPANY

Date _____

A true copy I certify
LAURA HINOJOSA
District Clerk, Hidalgo County, Texas
By _____ Deputy#3

Electronically Filed
3/20/2017 8:37:05 AM
Hidalgo County District Clerks
Reviewed By: Krystal Hidalgo

## CERTIFICATE OF SERVICE

I, Thomas F. Nye, hereby certify that on the 20th day of March, 2017, a true and correct copy of the above and foregoing document was served upon the following counsel as indicated:

*Attorneys for Plaintiff*
Brent L. Klender
Harold McCall
Don Crook
Wayne Wright, LLP
Email: bklender@waynewright.com
       hmccall@waynewright.com
       dcrook@waynewright.com

**VIA E-FILING**

Thomas F. Nye